## A97A1739. MONTOYA et al. v. THE STATE.
(499 SE2d 680)

BIRDSONG, Presiding Judge.

Jorge Montoya and Luis Franco appeal the denial of their motions to suppress.

In the light most favorable to the trial court's judgment and findings (*Miller v. State*, 221 Ga. App. 494 (471 SE2d 565)), the evidence shows that after 12:00 a.m. on December 1, 1994, Montoya and Franco were traveling south in a rented car on Interstate 95, a known drug conduit, in Camden County, Georgia, when they were stopped by Sheriff's Deputy Gregory Jackson, for following too closely. The driver, Montoya, exited the car on request and behaved normally until the deputy asked him about a large bulge toward the front of the waist area of his jacket. Montoya wore a leather-type bomber jacket with an elasticized waist; it was zipped halfway to his neck. The videotape of the incident shows the bulge at his waist was so large that it made the bottom of his jacket jut out from his body several inches. During Deputy Jackson's brief inquiries, Montoya held and moved his arms and hands as if to protect the object under his jacket. With the back of his fingers Deputy Jackson lightly tapped the bulge. The object felt "real hard," and Deputy Jackson asked what it was. Montoya refused to answer questions; he backed up and moved around, held his arms as if to shield the object, and put his left hand in his pants pocket almost directly under it. When Deputy Jackson inquired about the conspicuously hidden object, Montoya "got real nervous and offensive," and Deputy Jackson believed Montoya might be carrying a bomb. Not knowing exactly what Montoya was concealing, Deputy Jackson became concerned for his safety and for the safety of persons traveling on the interstate. Because of this concern, he called for a backup unit. Backup police assistance arrived. Deputy Jackson asked Montoya to remove his hand from his pocket, and he did so for an instant but then immediately slid his fingers back in his pocket.

Up to this point Deputy Jackson had remained calm. No less than eight times the deputies asked and then loudly demanded that Montoya take his hand from his pocket. Montoya refused. The videotape shows that the officers became visibly wary and the audible and visible tension of the encounter heightened. Montoya refused to take his hand from his pocket, despite the officers' repeated requests. Finally Deputy Jackson asked Montoya to unzip his jacket and demonstrated an unzipping motion to him. Montoya refused and kept his hand in his pocket. When Deputy Jackson moved as if to reach for Montoya's jacket zipper, the encounter erupted into a swift scuffle with Montoya suddenly and aggressively bent over and moving forward as if to remove or prevent discovery of the object hidden

in his jacket. The deputies struggled with Montoya's hand at the front of his jacket, and Deputy Jackson shouted that he had "some contraband" and unzipped Montoya's jacket. Two large brick-like packages were revealed. A field test determined them to contain cocaine. The officers arrested Montoya and then turned their attention to the passenger, Franco, who also was seen to have bulges in his jacket and refused to raise his hands even though Deputy Jackson loudly and repeatedly ordered him to do so. Franco was forcibly removed from the car. All told, four packages were seized containing about 1,000 grams of cocaine. *Held*:

1. In reviewing a trial court's decision on a motion to suppress, an appellate court's responsibility is to ensure that there was a substantial basis for the decision. Evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them. *Morgan v. State*, 195 Ga. App. 732, 735 (394 SE2d 639). The burden of proving that a search and seizure were lawful is on the State. OCGA § 17-5-30 (b); *State v. Slaughter*, 252 Ga. 435, 439 (315 SE2d 865).

2. Appellants contend the stop was pretextual, and that the search and seizure were unlawful because the officer had no reason to believe the "bulge" in Montoya's jacket was contraband. We find, however, that after the valid stop the deputies' actions throughout this detention were reasonable and were motivated by a genuine concern for their own protection and concern for the protection of others on the interstate that arose from the totality of the rapidly escalating situation confronting them and their law enforcement experience.

(a) Even the existence of an improper motivation on the part of an officer does not render a stop unreasonable. The validity of the stop depends not on the officer's actual state of mind but on an objective assessment of his actions in light of all the facts and circumstances confronting him at the time. *Larochelle v. State*, 219 Ga. App. 792, 796 (466 SE2d 672). Montoya's act of following too closely authorized the stop. The officers' congratulatory remarks made after the seizure are irrelevant, if in an objective assessment of their actions in light of all the facts and circumstances confronting them at the time of the stop, the facts and circumstances prove a valid stop. Id.

(b) "Further, incident to the investigatory *Terry* [*v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889)] stop, officers are allowed to 'pat down' a target 'when the officer reasonably believes that it is necessary to protect him from attack. It is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed.' [Cits.]" *Stewart v. State*, 227 Ga. App. 659,

660-661 (490 SE2d 194).

Although Deputy Jackson did not immediately conduct a pat-down after the proper stop, after he saw the unusual bulge which Montoya nervously refused to identify, Deputy Jackson "tapped" the bulge. This act was authorized because at this point Deputy Jackson had reasonable cause to suspect Montoya might be concealing a weapon or other dangerous instrumentality, specifically including a bomb, and Deputy Jackson's testimony shows that he was genuinely concerned about that possibility. Every act of the officer thereafter was reasonable in the circumstances confronting him at the time. "An officer may take appropriate self-protective measures when he lawfully confronts an individual and reasonably believes him to be armed or otherwise dangerous to the officer or others." (Punctuation omitted.) *Chaney v. State*, 207 Ga. App. 72 (427 SE2d 63). The key question in all cases remains whether the measures taken by the officer were reasonable under the circumstances. *Edwards v. State*, 165 Ga. App. 527, 528 (301 SE2d 693); *Chaney*, supra; see *Larochelle*, supra. When a minimally intrusive pat-down evolves to an intrusive search, the question is whether in all the circumstances a suspicion that the detained suspect is armed would be reasonable. See *Miller v. State*, supra, 221 Ga. App. at 496.

Investigative detentions involving suspects in vehicles are fraught with danger to law enforcement officers. *Edwards v. State*, 224 Ga. App. 332 (480 SE2d 246). To protect himself during questioning, an officer must have only "a reasonable, articulable suspicion [that the detained suspect] is committing a crime. The risk of injury justifies [a] reasonably tailored protective reaction to a citizen's threatening action. . . . The question is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Pace v. State*, 219 Ga. App. 583, 585-586 (466 SE2d 254).

The videotape shows that Montoya's refusal to remove his hand from his pocket, after repeated and shouted demands, reasonably excited Deputy Jackson's suspicion that Montoya was carrying a bomb or some form of weapon and was "dangerous." *Chaney*, supra.

Although appellants disparage, as an afterthought, Deputy Jackson's testimony that he opened Montoya's jacket because he thought it might contain a bomb, in fact it was not necessary that Jackson suspect a specific danger so long as his actions were reasonable in the circumstances confronting him. *Larochelle*, supra; see *Jones v. State*, 126 Ga. App. 841, 844-845 (192 SE2d 171). Nor does it matter that in addition to suspecting that Montoya was carrying a bomb, Deputy Jackson also mentally considered that the concealed object also might be money or some other object. Montoya was plainly concealing an object which he did not want the deputy to find, and he

refused to take his hand away from his pocket despite repeated, shouted commands of two deputies. Therefore it was more likely than not that the object was a dangerous object or weapon or that a weapon would be used to keep the object from being discovered. This videotape demonstrates how quickly a situation can lurch to violence, leaving no time for deliberate and detached analysis. The deputies' only protection in such a case is their training, experience, mature judgment, and instinct for survival, buttressed by a legally recognized protected right to control reasonably the explosive situation. He is authorized to ensure his safety in the circumstances confronting him. *Edwards*, supra, 224 Ga. App. at 335. The individual's right under our laws is not a right to be free from search but is the right to be free from unreasonable search and seizure, and the deputy's co-existing right reasonably "to [e]nsure his own safety," id., and the safety of others necessarily limits a detainee's right to privacy according to the circumstances of the individual case. We, therefore, reject the argument that because the deputy did not know precisely what was in Montoya's jacket and pocket, he could not reasonably suspect Montoya was armed with some dangerous object and therefore could not act in a reasonable responsive manner to protect himself.

Thus, as the transcript shows the deputies were conducting a legitimate *Terry* search of Montoya's jacket for weapons when the cocaine was discovered, the trial court's findings supporting the denial of the motions to suppress were not clearly erroneous.

3. The seizure of appellant Franco's cocaine was incident to a lawful arrest. See OCGA § 17-5-1.

Accordingly, the trial court correctly denied the motions to suppress.

*Judgment affirmed. Ruffin, J., concurs. Eldridge, J., concurs specially in judgment only.*

ELDRIDGE, Judge, concurring specially in judgment only.

I concur in judgment only.

In *Brown v. State*, Case No. A97A1851, decided March 20, 1998 (transferred to the Supreme Court of Georgia, Case No. S98A0981), the majority articulated its "furtive movements doctrine" as justifying the search of a one-inch piece of paper under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), for "safety" reasons. Here, the majority again expands the standard for a *Terry*-stop protective search when the majority states: "When a minimally intrusive pat-down *evolves to an intrusive search*, the question is whether in all the circumstances a suspicion that the detained suspect is armed would be reasonable." (Emphasis supplied.) This is not the law.

*Terry v. Ohio* permits a limited protective pat-down for weapons,

after "reasonable suspicions" that a crime has been committed justify the *stop*. The majority opinion juxtaposes the standard and finds that the "reasonable suspicions" go to the protective search, rather than the justification for the stop. However, the search — pursuant to the stop — is strictly limited and "reasonable suspicions" cannot expand it *beyond* its basic limitations of a general, protective search, as has been suggested by the majority herein.

A "protective search — permitted without . . . probable cause . . . must be strictly limited to that which is necessary for the discovery of weapons. . . . If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." (Citations omitted.) *Minnesota v. Dickerson*, 508 U. S. 366, 373 (113 SC 2130, 124 LE2d 334) (1993).

Accordingly, in my view, a minimally intrusive protective pat-down under *Terry* may not "evolve into an intrusive search" without probable cause. And, in fact, such expansion of *Terry* is not necessary for the disposition of this case.

Here, the officers discovered the contraband pursuant to a legitimate *Terry* protective search of Montoya's jacket, which the videotape shows was bulging out in front so far that it could have been concealing a bomb. The bulge was "hard"; Montoya would not identify it; he guarded it with his arms; and he would not remove his hands from near it when asked to do so. There was no way in which the officers could determine if Montoya had a weapon concealed in his jacket until it was unzipped and the "bulge" revealed. Then, once the hard, brown paper-wrapped bricks concealed in Montoya's jacket were in plain view, the officers knew that they contained contraband, as demonstrated by testimony *and* the videotape together. Under the factual circumstances of this case, the trial court's denial of appellants' motions to suppress was not clearly erroneous.

DECIDED MARCH 10, 1998 —
RECONSIDERATION DENIED APRIL 3, 1998.

*Christopher A. Frazier, Stephen G. Scarlett*, for appellants.
*Stephen D. Kelley, District Attorney, George C. Turner, Jr., Assistant District Attorney*, for appellee.