A05A0086. WHITENER v. THE STATE.

(611 SE2d 707)

PHIPPS, Judge.

Kelley Whitener makes this interlocutory appeal from the trial court's denial of his motion to suppress. For reasons that follow, we affirm.

We must abide by the following three principles when reviewing a trial court's order concerning a motion to suppress evidence:

First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial

court's findings and judgment.[1]

A Canton police officer received a dispatch around 10:00 p.m. on November 3, 2003 to go to a Cracker Barrel Restaurant parking lot because a suspicious person was squatting and looking into parked vehicles on the darkest side of the building and parking lot. An off-duty deputy sheriff reported the suspicious person to the Canton police. The suspicious person was described as "a white male with t-shirt and shorts and bandana."

When a police officer arrived a couple of minutes later, he saw Whitener, who matched the description he had been given, standing at the edge of the parking lot next to some vehicles. The officer pulled up beside Whitener, told him why he was there, and asked Whitener what he was doing in the parking lot. Whitener claimed that he was waiting for somebody to pick him up. The officer also asked Whitener for identification and determined that there were no outstanding warrants for his arrest. The officer then asked Whitener about an odd device attached to his belt loop. Whitener handed it to the officer and told him it was a flashlight. The officer testified that the flashlight had a very dim blue light and was attached to a band which could be worn around a person's head. The officer continued talking with Whitener, who was acting very fidgety and nervous. Whitener gave the officer conflicting accounts of his occupation; at one time he stated that he was working at a construction site, and another time he stated he was a mechanic for an individual. When the officer noticed large bulges in Whitener's pockets, he told him that he wanted to pat him down for weapons as a safety precaution. Whitener said "okay" and assumed the position without direction. Before actually beginning the pat-down, the officer asked Whitener if he had any weapons, and Whitener said "no," but explained that he did have rocks in his pockets. When the officer patted Whitener down, he removed from Whitener's pocket a large rock that had a very sharp two-inch point on one end. The officer felt more hard objects after removing this rock and "turned out" Whitener's pockets, finding more rocks and a small amount of suspected marijuana. The officer then placed Whitener under arrest for possession of marijuana.

At the conclusion of the motion to suppress hearing, the trial court found that "[t]he evidence in this case supports the officer's conclusions that there may [have been] additional dangers that would require additional action." In its written order denying the

---

[1] (Punctuation and footnote omitted.) *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004).

motion to suppress, the trial court concluded that the officer's decision to pat down the defendant "was based upon a reasonable articulable suspicion of misconduct."

1. Whitener claims the trial court erred in denying his motion to suppress because the police officer's search of his person was unlawful.

> There are three tiers of police-citizen encounters: (1) communications between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment; (2) brief seizures that must be supported by reasonable suspicion; and (3) full-scale arrests that must be supported by probable cause. [Cit.]
>
> In the first (tier), police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. [Cit.][2]

Relying on our opinion in *Brooks v. State*,[3] Whitener contends that this was an invalid second-tier search because, at the time the officer detained Whitener, he had no reasonable articulable suspicion that criminal activity had either taken place, was in progress, or was about to take place. In *Brooks*, we found that a police officer had no right to follow and detain a person who looked into a car window in a parking lot in broad daylight and abruptly left in his own vehicle after noticing the police officer. The defendant was not guilty of any traffic violation at the time he was pulled over by the officer. Additionally, before following and stopping the defendant, the officer had already ascertained that no attempt had been made to break into the parked car. Under these circumstances, we found that the officer did not have the articulable suspicion required to make an investigatory detention of the defendant.[4]

---

[2] (Footnotes omitted.) *Williams v. State*, 269 Ga. App. 616, 617 (604 SE2d 640) (2004).

[3] 144 Ga. App. 97 (240 SE2d 593) (1977).

[4] Id. at 98 (1).

After issuing our opinion in *Brooks*[5] we were asked to determine if an officer was justified in conducting an investigative stop based on a report of a suspicious person looking into the windows of multiple parked cars.[6] When the officer arrived at the scene, he saw two people, one of whom matched the description he had been given, peering into cars in a nearby parking lot. The officer stopped them, separated them, questioned them, and conducted a pat-down search for weapons. We distinguished *Brooks* based on these "far stronger" facts and concluded that the investigatory stop and pat-down search passed constitutional muster.[7]

We find that this case is factually more similar to *Hopkins* than to *Brooks*. As in *Hopkins*, the officer was responding to a dispatch about a suspicious person looking into the windows of more than one car. Although the officer did not personally observe Whitener looking into car windows, the suspicious person report was made by an off-duty deputy sheriff. Whitener's contradictory statements, in addition to his possession of a flashlight that would be ideal for peering into dark cars without drawing attention, authorized the officer's continued investigation. After observing the large bulges in Whitener's pockets that Whitener identified as rocks, the officer was entitled to pat Whitener down for his own safety.[8]

2. Whitener argues that because the officer testified that he did not threaten him in any way, the officer was not justified in patting him down for safety.[9] The trial court, however, reached a different conclusion, and the officer's testimony that he performed the pat-down for safety reasons supported the trial court's conclusion. As we are required to defer to the trial court's decision with respect to questions of fact and credibility if there is any evidence to support it,[10] we find that the trial court was authorized to find that the pat-down was justified.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 7, 2005.

---

[5] Supra.

[6] See *Hopkins v. State*, 209 Ga. App. 337 (433 SE2d 423) (1993) (physical precedent only).

[7] Id. at 338 (1).

[8] Cf. *Washington v. State*, 190 Ga. App. 143, 145 (378 SE2d 381) (1989) (rock can be a deadly weapon).

[9] Whitener does not argue that the officer should not have turned his pockets inside out after finding the large rock. As a result, we do not address this issue in our opinion. See *In the Interest of J. M.*, 237 Ga. App. 298, 300 (2) (513 SE2d 742) (1999) ("this Court will consider an issue only if it has been properly enumerated as error on appeal").

[10] *Hester*, supra, 268 Ga. App. at 502.

*Flint & Connolly, Gregory T. Douds,* for appellant.
*Garry T. Moss, District Attorney, Thomas J. Bowers III, Assistant District Attorney,* for appellee.