A06A0390. THE STATE v. BROWN.
(629 SE2d 123)

MIKELL, Judge.

Jeremy Pierre Brown was charged by accusation with felony possession of marijuana, failure to maintain lane, and underage possession of alcohol. He moved to suppress the 1.15 ounces of marijuana seized from his pocket as well as the bottles of alcohol found in his car during a traffic stop, arguing that the arresting officer

---

lacked reasonable suspicion necessary to sustain a second-tier search. The trial court granted the motion after a hearing. The state appeals, and we affirm for the reasons set forth below.

> There are three tiers of police-citizen encounters: (1) communications between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment; (2) brief seizures that must be supported by reasonable suspicion; and (3) full-scale arrests that must be supported by probable cause. . . . The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.[1]

In the case at bar, we are concerned with the propriety of the second-tier *Terry*[2] stop. At the hearing on the motion to suppress, the arresting officer, who was the sole witness, testified that on February 3, 2005, he was driving alone in Newton County when he saw Brown drive into a subdivision and let a man out of his car. Brown then pulled out onto a four-lane highway, and the officer followed him for more than two miles. Contending that he saw Brown cross the white lane line twice, the officer stopped Brown for suspected drunk driving. The officer, however, did not smell alcohol on Brown's breath, so he did not administer any sobriety tests. The officer then testified that he had been concerned that the sticker on Brown's license tag had expired, although he soon realized that it was valid. The officer testified that he obtained Brown's license and started to run a check on it through dispatch. According to the officer, he noticed that Brown was "nervous and shaky"; he was "bending over to the right, . . . shuffling around inside the car," so he asked Brown to step out of his vehicle. The officer explained that he did not like Brown moving around and wanted to "bring[ ] him out of his element." Brown stood by the car with his hands in the front pocket of his hooded sweatshirt. The officer asked Brown to take his hands out of the pocket and "when he did I noticed a rather large bulge in the middle . . . of the little pocket." When he asked Brown what was in the pocket, Brown stuck his hands back into it, and the officer grabbed his hand, pulled it

---

[1] (Footnote omitted.) *Whitener v. State*, 272 Ga. App. 28, 30 (1) (611 SE2d 707) (2005). See also *Welborn v. State*, 232 Ga. App. 837, 839 (2) (503 SE2d 85) (1998).

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

away, looked inside the pocket, saw the bag of marijuana, handcuffed Brown, and pulled out the bag. Although the officer later testified he did not know whether the bulge might be a weapon, he never testified that he was in fear for his safety. Rather, he testified he grabbed Brown's hand "because he was acting all shaky and like he didn't want me to touch that pocket . . . because he had . . . over an ounce of marijuana inside his pocket." The officer admitted that he did not conduct a *Terry* pat-down search.

At the conclusion of the hearing, the trial judge discredited the officer's testimony that Brown had been weaving. The judge believed that the "weaving of the lane was thrown in when [the officer] realized the tag wasn't . . . expired," which the officer should have been able to determine. The trial court then issued an order finding the following facts: that the officer followed Brown for more than two miles before pulling him over for failure to maintain lane; that the officer checked his driver's license, which was valid; that the officer did not ask Brown for the vehicle's registration or conduct field tests for DUI; that instead, the officer went to the rear of the vehicle to check the tag, which had not expired; that the officer then ordered Brown out of his vehicle; that the officer had not arrested Brown nor conducted a pat-down search, but upon observing a bulge in Brown's jacket, pulled the item from his pocket; and that the item seized was a bag of marijuana. Based on these facts, the court held that the officer failed to articulate the reasonable suspicion necessary to sustain a second-tier search. The court therefore granted Brown's motion to suppress the evidence seized as a result of the improper search.

On appeal, the state argues that we are compelled to apply the de novo standard of review as stated in *Daniel v. State*.[3] "In reviewing a trial court's decision on a motion to suppress where the evidence was uncontroverted and no question regarding the credibility of witnesses was presented, an appellate court must conduct a de novo review of the trial court's application of law to the undisputed facts."[4] However, where, as here, the credibility of the officer is outcome-determinative, we apply the following three-part test:

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, the judge sits as the trier of facts. The trial judge hears the

[3] 277 Ga. 840 (597 SE2d 116) (2004).

[4] (Citations omitted.) Id. at 849 (5); accord *Silva v. State*, 278 Ga. 506, 507 (604 SE2d 171) (2004).

evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[5]

The state further argues that the trial court was required to believe the officer's testimony in its entirety because that testimony was uncontradicted. The state cites the dissenting opinion in *Tate v. State*,[6] a Supreme Court decision: "The direct and positive testimony of an unimpeached witness which is not inherently improbable, incredible or unreasonable and which is not contradicted, cannot be arbitrarily disregarded by the trier of fact."[7] However, we are bound by the majority opinion, which holds: "Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony."[8]

In the case at bar, the trial court determined at the hearing that the officer's testimony that Brown had been weaving was not credible. As the factfinder, the court was authorized to make that determination. We note that when asked how far Brown had gone over the white line, the officer stated: "I can't testify to that." Defense counsel then asked whether he went over the line completely or just touched it. The officer responded: "He went over the line 100 percent. Like I don't know how much — I mean, I can't tell you if he went two and a half feet over the line or if he. . . ." This complete lack of recollection as to the distance the vehicle crossed the line may have caused the court to believe that no traffic violation had occurred. Moreover, the officer's testimony was impeached, although on a different critical point: namely, how the marijuana came into his view. The officer first stated that when he grabbed Brown's hand, the bag protruded from his pocket and came into plain view. However, defense counsel impeached the officer by reading from his report, in which he stated

---

[5] (Punctuation and footnote omitted.) *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004). Accord *State v. Ellison*, 271 Ga. App. 898 (1) (611 SE2d 129) (2005); *State v. Sanders*, 274 Ga. App. 393 (617 SE2d 633) (2005).

[6] 264 Ga. 53 (440 SE2d 646) (1994).

[7] (Citation omitted.) Id. at 59 (Carley, J., dissenting.)

[8] (Citation and footnote omitted.) Id. at 56 (3). Accord *Hester*, supra at 504; *Ellison*, supra at 901 (3) (a); *Sanders*, supra at 397.

that he looked inside the pocket and observed the bag. Therefore, the premise of the state's argument that the officer's testimony was wholly unimpeached is flawed. The trial court did not clearly err in finding that the officer lacked reasonable suspicion to make a *Terry* stop.

> We cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision. We reiterate that we are a court for the correction of errors of law and cannot draw a different inference from the evidence or make a credibility determination contrary to the one made by the trial court.[9]

Finally, we reject the state's argument that this case is controlled by *Montoya v. State*.[10] We first note that *Montoya* is physical precedent only.[11] Second, the case is distinguishable. The defendant in *Montoya* was stopped by a deputy for following too closely on Interstate 95, a "known drug conduit."[12] The defendant was wearing a jacket with such a large bulge at the waist that the bottom of the jacket protruded from his body several inches. When the deputy tapped the bulge, it felt very hard. The defendant refused to state what the object was and shielded it with his arms. The deputy feared it might be a bomb and called for backup. Two deputies loudly asked the defendant *eight times* to remove his hand from his pocket. When the defendant continually refused to comply, the officer finally reached over to unzip the jacket. A scuffle ensued.[13] Ultimately two large bricks of cocaine were revealed.[14] In affirming the denial of the defendant's motion to suppress, we held that the search was authorized by the officer's reasonable belief that the defendant might be armed, under the theory that officers are allowed to "pat down a target when the officer reasonably believes that it is necessary to protect him from attack."[15]

This case is distinguishable, both on its facts and as to its appellate posture. In *Montoya*, the trial court found as a fact that the

---

[9] (Punctuation and footnote omitted.) *Sanders*, supra at 398.

[10] 232 Ga. App. 24 (499 SE2d 680) (1998) (physical precedent only).

[11] "A judgment in which all judges of the Division fully concur is a binding precedent; if there is a special concurrence without a statement of agreement with all that is said in the opinion or a concurrence in the judgment only, the opinion is a physical precedent only." Court of Appeals Rule 33 (a).

[12] *Montoya*, supra.

[13] Id.

[14] Id. at 25.

[15] (Citation and punctuation omitted.) Id. at 25 (2) (b).

defendant was stopped for following too closely, a finding which we affirmed under the any evidence rule. Here, the trial court, making a credibility determination, did not believe the officer's testimony that Brown had committed a traffic violation. In addition, in this case the officer did not initially testify that he feared for his safety when he grabbed Brown's hands and looked into his pocket. After the officer had already relayed the events leading to Brown's arrest, the prosecutor asked him, "did that [large bulge] concern you for any reason at that time?" It was not until that point that the officer testified that he "didn't know if it was a gun or a weapon."

> A *Terry* pat-down is generally a two-step process. The officer must pat down first and then intrude beneath the surface only if he comes upon something which feels like a weapon. In order to exceed a pat-down without first discovering a weapon, an officer must provide specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down.[16]

"More invasive procedures have been approved where an officer has had a reasonable basis for concluding that a suspect was armed or was otherwise a threat to his personal safety."[17] "Implicit in this rule of law, however, is the prerequisite determination that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a *Terry* protective pat-down would not be unreasonable in the given set of circumstances."[18]

In the case at bar, even assuming arguendo that a traffic violation had occurred in the officer's presence, which would have authorized the officer to detain Brown, the trial court would have been authorized to conclude the officer's conduct of putting his hand inside Brown's pocket exceeded the permissible scope of a pat-down search. The officer did not testify that he believed that Brown was a threat to his personal safety, a fact that the court commented upon when ruling from the bench. Therefore, contrary to the state's argument, *Montoya* provides no basis for reversal.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

---

[16] (Citations omitted.) *State v. Newton*, 227 Ga. App. 394, 395-396 (1) (489 SE2d 147) (1997).

[17] (Citation omitted.) Id. at 396 (1).

[18] (Citation and footnote omitted.) *Edgell v. State*, 253 Ga. App. 775, 777 (560 SE2d 532) (2002). Accord *Milby v. State*, 256 Ga. App. 429, 430-431 (569 SE2d 256) (2002).

DECIDED MARCH 24, 2006.

*W. Kendall Wynne, Jr.,* District Attorney, *Stephen L. Coxen,* Assistant District Attorney, for appellant.
*John B. Degonia, Jr.,* for appellee.