### A06A1514. THE STATE v. WILLIAMS.
(635 SE2d 807)

MILLER, Judge.

Jared Rashad Williams was arrested and charged with possession of less than one ounce of marijuana in violation of the Georgia Controlled Substances Act. Williams filed a motion to suppress (i) all evidence seized when he was stopped and detained by officers with the Lowndes County Sheriff's Department and (ii) all statements made by him to any law enforcement officer following such detention. The trial court granted Williams' motion, and the State appeals. We discern no error and affirm.

The record reveals that on September 15, 2005, officers with the Lowndes County Sheriff's Department received a tip from a concerned citizen that people were smoking marijuana at Eastwind Park after dark. The officers went to the park several times over the next few days to investigate the complaint. On September 23, 2005, at

approximately 10:15 p.m., the officers returned to the park in an unmarked truck. There, they saw Williams, along with several other youths, on and around a swing set.

The officers testified that after they identified themselves, Williams jumped out of the swing, walked away from them at a brisk pace, but stopped after being ordered to do so. The officers also testified that one of them asked Williams if they could search him for narcotics. Williams pulled out the contents of his pockets, which included a marijuana "blunt."

Williams disputed the testimony of the officers and claimed that he walked away when he saw the unmarked truck pull up, not knowing that the occupants were police officers. He also claimed that he stopped walking as soon as the officers identified themselves. He asserted that one of the officers had a gun pointed at him, so that he had no choice but to consent to the search. One of the youths who testified in Williams' defense also maintained that an officer was pointing his gun at Williams. Upon being recalled, one officer acknowledged that he probably pulled out his stun gun when Williams ran, but he maintained that he never pulled out his firearm.

The trial court granted Williams' motion to suppress, finding that the officers had failed to articulate a reasonable suspicion of illegal activity and citing as "very significant" that the officers' initial testimony omitted any reference to one of them pulling out his stun gun.

In reviewing a trial court's decision on a motion to suppress where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, an appellate court is required to conduct a de novo review of the trial court's application of law to the undisputed facts. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

Here, however, Williams and his friends dispute the testimony of the police officers. Since the credibility of police officers is outcome determinative, our review is guided by the following three principles:

> First, the judge sits as the trier of facts. The trial judge hears the evidence, and [the judge's] findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *State v. Brown*, 278 Ga. App. 457, 459 (629 SE2d 123) (2006). In addition, a trial court's ruling on a motion to suppress will be upheld if it is right for any reason. *Fincher v. State*, 276 Ga. 480, 481 (2) (578 SE2d 102) (2003).

Here, despite the trial court's claim that the officers had no basis to suspect that Williams was committing a crime at the time they conducted their search, flight is a circumstance sufficient to give an articulable suspicion of illegal activity. *Tuggle v. State*, 236 Ga. App. 847, 849 (1) (c) (512 SE2d 650) (1999). Assuming that Williams' act of walking away from the officers provided them with such a suspicion, they were authorized to conduct a brief, *Terry*-type stop in which they could restrain Williams for further brief questioning. Id.

Authority to conduct a *Terry* stop would also have provided the officers with the authority to pat Williams down for weapons and intrude beneath the surface of his clothing if they came upon something that felt like a weapon or if they "had a reasonable basis for concluding that [the] suspect was armed or was otherwise a threat to [their] physical safety." (Citation and punctuation omitted.) *Brown*, supra, 278 Ga. App. at 462. Here, however, the officers did not search Williams for weapons or deem Williams to be a threat to their physical safety prior to the search. In fact, one of the officers testified that the request to search Williams was made specifically to see if Williams was in possession of narcotics. As a result, the search of Williams exceeded the permissible scope of a *Terry* pat-down search and was not authorized by Williams' conduct in walking away from the officers.

Since "[m]erely requesting consent for a search is not a seizure" (*State v. Devine*, 276 Ga. App. 159, 160 (622 SE2d 854) (2005) (citation and punctuation omitted)), the instant search would have been lawful had Williams consented to it. Here, the State claims that Williams consented to the search because he emptied his own pockets upon the request of the officers. We are unable, however, to conclude that Williams' actions constituted a freely-given consent to the search.

> We are required to scrutinize closely an alleged consent to search. The voluntariness of consent is determined by the totality of the circumstances; no single factor controls. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect. The appropriate inquiry is whether a reasonable person would feel free to decline the officers' request to search. . . .

(Citations and punctuation omitted.) *Corley v. State*, 236 Ga. App. 302, 306 (1) (b) (512 SE2d 41) (1999).

Since we are required to construe the evidence most favorably to upholding the trial court's judgment, we must assume that Williams emptied his pockets while one of the officers had his stun gun pointed at him. A reasonable person would not feel free to decline an officer's request to search under such conditions. As a result, any consent implied by Williams' emptying of his own pockets is rendered invalid. See *State v. Jourdan*, 264 Ga. App. 118, 121 (1) (589 SE2d 682) (2003) ("Consent which is the product of coercion . . . on the part of the police is invalid.") (citation and punctuation omitted).

Since the officers exceeded their authority to search Williams and since evidence supports the trial court's conclusion that Williams did not freely consent to the search, we must affirm the trial court's grant of Williams' motion to suppress.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 17, 2006.

*Richard W. Shelton, Solicitor-General, Sandra K. Guest, Assistant Solicitor-General*, for appellant.
*Nicola M. Bajalia*, for appellee.