2023 IL App (1st) 211558-U

No. 1-21-1558

Filed July 20, 2023

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 3734 |
| | ) | |
| JONATHAN ROMAN, | ) | Honorable |
| | ) | Timothy Joyce, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Police had reasonable suspicion to detain the defendant for investigation. Counsel's failure to object to a statement from an officer's body-worn camera footage as hearsay was not ineffective assistance.

¶ 2     Following a bench trial, Jonathan Roman was convicted of being an armed habitual criminal (AHC) and sentenced to seven years' imprisonment. On appeal, he argues his motion to suppress evidence of a recovered firearm should have been granted as he was unlawfully seized. Alternatively, Roman alleges his trial counsel was ineffective for failing to object, on hearsay

grounds, to the admission of a police officer's statement heard on the officer's body-worn camera footage. We affirm.[1]

¶ 3                                                     I. BACKGROUND

¶ 4       Roman was indicted for various offenses related to his alleged possession of a firearm on January 31, 2020. Before trial, Roman filed a motion to suppress evidence of a firearm recovered during his seizure by police. He contended the police officers lacked reasonable suspicion to detain him, making any evidence from the encounter inadmissible at trial.

¶ 5       At a hearing on the motion, Chicago Police Officer Muhammad Faraj testified he and his partner, Officer Miguel Zamudio, were in a marked patrol vehicle when they heard a dispatch report of a "suspicious male Hispanic looking into vehicles" on the 3700 block of South Damen Avenue. The officers drove to that block. Upon arriving, they observed Roman, standing in the street, looking into a parked car. As the police vehicle neared him, Roman hurried to the sidewalk. The officers stopped their vehicle, intending to approach him on foot for questioning.

¶ 6       As the officers opened their doors, Roman began running with his right hand in his pocket. The officers, both in uniform, ran after him. Officer Faraj called to Roman, commanding Roman to remove his hand from his pocket. Officer Zamudio eventually tackled Roman in the grassy area of a park. Officer Faraj observed Roman throw a silver metal object with his right hand. Upon investigating the area where Roman had thrown the object—about 15 feet away—Officer Faraj found a loaded silver Colt revolver.

¶ 7       The parties stipulated to the admission of video of the incident obtained from Officer Faraj's body-worn camera. The video, which was published, depicts Roman running from the officers while they shout commands to stop and remove his hand from his pocket. Just after Officer

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Zamudio tackles Roman, Officer Faraj states, "22, he just tossed a pistol." While pinned by Officer Zamudio, Roman exclaims, "I didn't do nothing!" A cell phone is visible in Roman's right hand. Faraj tells Roman, "You just threw that gun, you idiot. The one you just tossed. It's all on camera, dude." Roman protests that he did not have a gun. Officer Faraj replies, "Okay. Cool. We just seen you toss that gun."

¶ 8 Officer Zamudio testified consistently with Officer Faraj.

¶ 9 The trial court denied Roman's motion to suppress evidence. The court noted that looking into a parked car, as Roman did, could have either a criminal or innocent explanation—one may be looking for something to steal or simply admiring the car. Further, the court found the officers credibly testified that Roman fled upon noticing them, but also noted there was no evidence this occurred in a high crime area, or that the area had reports of auto break-ins. Nevertheless, the court found that Roman had abandoned the gun before any officer "[laid] hands on him." Finding that fact dispositive, the Court denied the motion to suppress. The court likened this case to *California v. Hodari D.*, 499 U.S. 621 (1991), in which the United States Supreme Court found a defendant was not entitled to suppression of evidence of contraband that he abandoned while fleeing police who had commanded him to stop, despite the officers lacking reasonable suspicion to order the defendant to do so. The court, here, explained:

> "[I]f Mr. Roman had stayed where he was, acquiesced to a police command to stop when maybe they didn't have enough information to stop him, the subsequent search of his person that would have resulted in the recovery of any contraband, such as a gun, might have been suppressed.
>
> That's not how it played out. It played out much like it did in *Hodari D.*"

¶ 10    The case proceeded directly to a bench trial. The parties stipulated to the admission of all evidence from the suppression hearing. They further stipulated that Roman did not possess a Firearm Owner's Identification (FOID) card at the time of the offense. Certified copies of Roman's prior felony convictions for robbery and burglary were also admitted into evidence. Roman elected not to testify.

¶ 11    In closing statements, defense counsel argued the State failed to meet its burden to prove Roman guilty beyond a reasonable doubt. She contended the video from Officer Faraj's body camera contradicted his testimony since it failed to show that Roman threw an object. Instead, she submitted, the video shows Roman holding a silver-colored cell phone in his right hand as he lies on the ground, having been tackled by Officer Zamudio.

¶ 12    In ruling, the trial court stated it believed the officers' testimony. The court acknowledged that the body camera footage did not depict Roman toss a firearm. But the video clearly showed, in the court's assessment, a firearm in the grass nearby. The court found Officer Faraj's contemporaneous statement "22, he just tossed a pistol" was an excited utterance, which he communicated to other officers, seen in the video, who had come to the area in response to the dispatch. Thus, the court determined the State proved Roman possessed a firearm beyond a reasonable doubt. Based on that finding, his lack of a FOID card, and his prior convictions, the court found Roman guilty on all counts, merging the lesser counts into the AHC count. At a subsequent hearing, the court sentenced Roman to seven years' imprisonment. Roman filed a timely notice of appeal.

¶ 13                              II. ANALYSIS

¶ 14                          A. Motion to Suppress

¶ 15    Roman first challenges the trial court's denial of his motion to suppress evidence. When

reviewing a trial court's ruling on a motion to suppress, we apply a two-part standard. *People v. Eubanks*, 2019 IL 123525, ¶ 33. The trial court's factual findings will be reversed only if against the manifest weight of the evidence, while the ultimate determination of whether evidence should be suppressed is reviewed *de novo*. *Id.* We may affirm on any basis found in the record. *People v. Bahena*, 2020 IL App (1st) 180197, ¶ 25.

¶ 16    Roman argues the trial court correctly found the officers lacked justification to detain him. He maintains, however, that the court erroneously determined he abandoned the firearm before he was seized. The seizure began, Roman asserts, when Officer Zamudio laid hands on him, and he discarded the gun in response to the illegal seizure. Likewise, Roman contends that neither the anonymous report, the officers' observation of him looking into a car, nor his flight gave the officers lawful reason to seize him. Consequently, evidence of the gun should have been suppressed as fruit of an illegal seizure. We disagree.

¶ 17    Contrary to Roman's characterization, the trial court made no finding as to whether the officers were justified in detaining him. Rather, the court remarked, "*maybe* they didn't have enough information to stop him." (Emphasis added.) Similarly, the court acknowledged that Roman could have been looking into cars for innocent reasons. These remarks, however, do not amount to a finding that the officers were unjustified in seizing Roman. Instead, the court left the question unresolved since it decided the motion on other grounds.

¶ 18    We believe the officers were justified in stopping Roman. In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court established that "a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to, commit a crime." *People v. Close*, 238 Ill. 2d 497, 505 (2010) (citing *Terry*, 392 U.S. at 22). Reasonable suspicion of criminality arises when an officer "observes unusual conduct

which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *People v. Jenkins*, 2021 IL App (1st) 200458, ¶ 47 (quoting *Terry*, 392 U.S. at 30). Reasonable suspicion is a " 'low bar.' " *People v. Lozano*, 2022 IL App (1st) 182170, ¶ 33 (quoting *People v. Patel*, 2020 IL App (4th) 190917, ¶ 25). "[T]he evidence necessary to justify a *Terry* stop need not rise to the level of probable cause and can even arise when no violation of the law is witnessed; however, a mere hunch is insufficient." *People v. Maxey*, 2011 IL App (1st) 100011, ¶ 46. "Reasonable suspicion is based on the totality of the circumstances and commonsense judgments and inferences about human behavior." *Lozano*, 2022 IL App (1st) 182170, ¶ 33 (citing *People v. Timmsen*, 2016 IL 118181, ¶¶ 9, 13).

¶ 19      Here, the officers received a report of a "suspicious male Hispanic looking into vehicles" at a certain location. Upon arriving on that block, the officers observed Roman, who is Latino, looking into a car. Although Roman's behavior could have had an innocent explanation, "[r]easonable suspicion does not require an officer to 'rule out the possibility of innocent conduct.' " *Jenkins*, 2021 IL App (1st) 200458, ¶ 47 (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). Observing a person peering into vehicles parked on a city street is sufficient for an officer to reasonably suspect that the person is "casing" the cars—i.e., preparing to steal a car or items therein. Several courts have found investigative stops justified by comparable observations. See *People v. German*, 663 N.Y.S. 2d 647 (1997) (finding investigative stop justified upon report of suspects walking up and down street peering into cars); *State v. Smith*, 176 Wash. App. 1010 (2013) (finding *Terry* stop valid when defendant peered into cars as he rode a bicycle); *Whitener v. State*, 272 Ga. App. 28 (2005) (investigative stop valid upon report of suspect peering into cars in parking lot); *In re Michael S.*, 141 Cal. App. 3d 814 (1983) (person seen peering into cars gave rise to reasonable suspicion). Thus, we find that the officers had reasonable, articulable suspicion

of criminal activity to warrant an investigatory stop of Roman at the inception of the stop. See *People v. Thomas*, 198 Ill. 2d 103, 109 (2001) ("The conduct constituting the stop under *Terry* must have been justified at its inception.").

¶ 20    Our finding that police had reasonable suspicion at the inception of the stop makes several of the issues Roman raises irrelevant. For instance, we need not analyze the reliability of the anonymous report since the officers did not rely on the report alone to stop Roman. The reliability of an anonymous tip is relevant when the tip reports concealed criminal activity and police lack any other basis to conduct a *Terry* stop. See, *e.g.*, *Florida v. J.L.*, 529 U.S. 266 (2000) (holding that an anonymous tip of a person concealing a weapon—with no other indicia of criminal activity—did not justify the stop and search of the defendant). A tip of concealed criminal activity, however, was not the basis of the stop here. Rather, the tip reported Roman's visible conduct of peering into parked cars, which the officers observed for themselves on the street in broad daylight. Additionally, their observations were consistent with the report.

¶ 21    Similarly, we need not consider whether Roman's flight occurred in an area known for criminal activity. This factor can support reasonable suspicion when a person runs from police and no other circumstances indicate criminal activity. See, *e.g.*, *Illinois v. Wardlow*, 528 U.S. 119 (2000). But here, Roman's flight was coupled with the officers' observation of him looking into cars after receiving a dispatch reporting the same conduct. Roman also kept his hand in his pocket as he ran, suggesting he was concealing contraband. Thus, his flight only added to the suspicion justifying the stop.

¶ 22    Furthermore, since the officers could lawfully stop Roman, it is irrelevant whether he threw the gun before or after Officer Zamudio "laid hands on him." An abandoned item should be suppressed when abandoned in response to an illegal seizure, not a legal one. *Cf. People v.*

*McClendon*, 2022 IL App (1st) 163406, ¶ 28 (finding evidence of a handgun should have been suppressed when officers lacked reasonable suspicion to stop the defendant and defendant dropped the handgun after yielding to their show of authority). Since the seizure here was legal, Roman's abandonment of the handgun is of no moment.

¶ 23    In sum, we find that Roman's seizure was lawful, and therefore, evidence of the recovered firearm was admissible.

¶ 24                    B. Statement from Body Worn Camera Footage

¶ 25    We next consider Roman's claim that his trial counsel was ineffective for failing to object, on hearsay grounds, to the admission of Officer Faraj's statement "22, he just tossed a pistol" as heard on his body-worn camera footage.

¶ 26    Claims of ineffective assistance of counsel are governed by the deficiency-and-prejudice framework established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Jenkins*, 2021 IL App (1st) 200458, ¶ 40. Both prongs must be satisfied to prevail; if the defendant cannot establish prejudice, we can dispose of an ineffectiveness claim on this basis alone. *Id.* Prejudice, in this context, means a reasonable probability of a different outcome absent counsel's alleged error. *People v. Hale*, 2013 IL 113140, ¶ 18. If evidence was admissible, however, a defendant was not prejudiced by their attorney's failure to object to its admission. *People v. Saulsberry*, 2021 IL App (2d) 181027, ¶ 51.

¶ 27    The record here forecloses that Roman could establish prejudice resulting from his counsel's failure to object to Officer Faraj's statement since the court essentially considered and ruled on the issue *sua sponte*, finding the statement admissible as an excited utterance. "Excited utterance" is a recognized exception to the general rule excluding the admission of hearsay. See Ill. R. Evid. 803(2) (eff. Jan. 1, 2011). An excited utterance is "[a] statement relating to a startling

event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* From context, we believe the court was referring to this hearsay exception, not merely describing Officer Faraj's manner of speech. In a bench trial, a trial judge is presumed to know the law. *People v. Taylor*, 344 Ill. App. 3d 929, 937 (2003). Thus, the record demonstrates the trial court would have overruled an objection to the statement as hearsay, finding the excited utterance exception applied.

¶ 28    Further, even if Roman's lawyer had objected, preserving the issue for appeal, we would reverse the trial court's hearsay ruling only for an abuse of discretion. *People v. Perkins*, 2018 IL App (1st) 133981, ¶ 53. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the court. *Id.*

¶ 29    For a hearsay statement to be admissible under the excited utterance exception, the statement must relate to the circumstances of an occurrence that was sufficiently startling to produce a spontaneous and unreflecting statement. *Id.* Courts consider the totality of the circumstances, including the time elapsed between the event and the utterance, the nature of the event, the declarant's mental and physical condition, and the presence of self-interest. *Id.*

¶ 30    Here, Officer Faraj's statement occurred after he observed Roman toss a handgun while he and Officer Zamudio attempted to detain him. Thus, the statement "22, he just tossed a pistol" related to the circumstances of the occurrence. Moments before, the officers observed Roman peering into a vehicle, raising their suspicion that he was involved in criminal activity. Then, Roman took off running as the officers approached. The video depicts that Roman had not yielded and the officers were continuing their attempt to detain him when the statement was uttered. These events were sufficiently startling to produce a spontaneous and unreflecting statement. In addition,

the statement followed Officer Zamudio's initial physical contact with Roman by mere seconds, and only approximately 15 seconds had elapsed from the time Officer Faraj exited his vehicle. So, there was virtually no time to fabricate the statement.

¶ 31    Furthermore, the statement was preceded by "22." The video—viewed in its entirety—indicates Officer Faraj precedes his statements with "22" when he communicates to other officers by radio. As the trial court observed, additional officers were arriving on the scene. Officer Faraj had an interest in truthfully informing the arriving officers of the thrown handgun, which posed a potential danger because Roman was still struggling and not fully restrained. Thus, considering the totality of the circumstances shown here, we would not conclude the trial court abused its discretion in finding the statement met the excited utterance exception to the hearsay rule.

¶ 32    Additionally, we would affirm Roman's conviction even if we were to consider Officer's Faraj's statement as improperly admitted hearsay. Although the trial court noted Officer Faraj made a contemporaneous statement that Roman threw a gun, it did not rely on the statement to find Roman guilty. The trial court remarked that it believed Officer Faraj's and Officer Zamudio's testimony, which included that Roman tossed the handgun they recovered in the grass nearby. Officer Faraj's testimony that he observed Roman toss a handgun was undoubtedly admissible. So, the trial court would have found Roman guilty without the video recorded statement. It added corroboration but was not crucial to Roman's conviction. Thus, even if admitted in error, the statement would have been harmless. "Under the harmless error standard, if the State can sustain its burden of proof with properly admitted evidence, the error in admitting improper evidence is considered harmless." *In re D.M.*, 2016 IL App (1st) 152608, ¶ 31; see also *People v. Sims*, 192 Ill. 2d 592, 628 (2000) ("The admission of hearsay evidence is harmless error where there is no

reasonable probability that the jury would have acquitted the defendant absent the hearsay evidence.").

¶ 33        For these reasons, we conclude Roman cannot show a reasonable probability of a different outcome. Thus, he cannot establish prejudice to sustain his ineffective assistance claim.

¶ 34        The State contends that the Law Enforcement Officer-Worn Body Camera Act (50 ILCS 706/10-1 *et seq*. (West 2018)) makes the statements captured in the audio of the body camera footage admissible. A divided panel of this court, however, found that the admission of body-worn camera video is subject to evidentiary limitation, including the rules of evidence regarding hearsay. *People v. Collins*, 2020 IL App (1st) 181746, ¶ 30. Our Supreme Court granted the State's petition for leave to appeal to consider the issue, but the court dismissed the appeal when the State abandoned its position and argued for reversal on other grounds. See *People v. Collins*, 2022 IL 127584, ¶ 22. Given our analysis, we need not address the question here.

¶ 35                           III. CONCLUSION

¶ 36        Based on the foregoing, we affirm the judgment of the trial court.

¶ 37        Affirmed.