A01A0734. BROWN v. THE STATE.
(550 SE2d 701)

SMITH, Presiding Judge.

Cornelius Edward Brown ("Brown"), his son Robert Michael Brown, and Tom Perry were indicted by a Madison County grand jury on one count of arson in the first degree by burning the dwelling house of another. Brown was tried separately for the offense; Robert Brown pled guilty and testified against his father. The jury found Brown guilty, his motion for new trial was denied, and he appeals. Finding no error, we affirm.

1. Brown first complains that the trial court erred when it allowed the State to question Robert Brown regarding his prior consistent statement to the police. In *Woodard v. State,* 269 Ga. 317 (496 SE2d 896) (1998), the Supreme Court of Georgia limited the application of the rule established in *Cuzzort v. State,* 254 Ga. 745 (334 SE2d 661) (1985), regarding the introduction of prior consistent statements of a witness. In *Woodard,* the State introduced the victim's prior con-

---

sistent statement through the testimony of a sheriff's investigator on direct examination. The Supreme Court held that the statement was "hearsay evidence improperly admitted to bolster the witness's credibility in the eyes of the jury." Id. at 321 (2).

In contrast, Robert Brown was questioned by the State regarding his *own* earlier statement to investigators.

> The simple answer to this enumeration is that a witness' testimony as to what he (the witness) said is not hearsay. Hearsay evidence is that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons. In short, the hearsay rule prohibits the witness from testifying as to what another person said; it does not apply to what the witness himself said.

(Citations and punctuation omitted.) *Webb v. State*, 154 Ga. App. 395, 397 (2) (268 SE2d 438) (1980); see also *Butts v. State*, 141 Ga. App. 634 (5) (234 SE2d 176) (1977); *Sellers v. White*, 104 Ga. App. 148, 149 (5) (121 SE2d 385) (1961).

Even if this were not the case, the evidence against Brown in addition to Robert Brown's testimony regarding his prior statement was overwhelming. The State presented testimony from a fire investigator and a forensic chemist that the fire was incendiary in origin and that gasoline was used as an accelerant. An eyewitness saw a black Dodge truck several times near the house, wrote down the tag number, and observed one man waiting in the truck while the other was running down the driveway carrying a garbage bag with "something sticking out of it." Within "about two minutes" he saw that the house was on fire. At trial, he positively identified Brown and his son as the two men he had seen. The police located Brown and his son using the tag number of his truck, and they were questioned and confessed to the arson. At trial, Robert Brown testified in detail to the arson. He testified that Perry hired him and his father to burn down the house of a man who owed him money, that they drove by the house "three or four times" to identify it, that his father purchased two gallons of gasoline, and that he poured the gasoline on the porch and side of the house and lit it.[1] Under the circumstances, it does not appear likely that Robert Brown's testimony regarding his earlier statement to police contributed to the verdict. *Astudillo v. State*, 244 Ga. App. 612, 613-614 (536 SE2d 271) (2000).

2. Brown also contends the trial court erred in failing to grant his motion for directed verdict because the State failed to prove the

---

[1] Shortly afterward, the Browns discovered that they had burned the wrong house.

corpus delicti of the alleged crime. He asserts that while the indictment showed the address of the burned property as Cleghorne Road, the house actually was located on George Washington Avenue.

Brown relies upon *Charles v. State*, 167 Ga. App. 806 (307 SE2d 703) (1983). In that burglary case, the victim, a business, owned five warehouses in the county. The indictment alleged that a warehouse at a specific address was burglarized, but the proof at trial showed that the crime actually occurred at another of the victim's warehouses at a different address. We held that failure to grant a directed verdict of not guilty was error, holding that the general rule of *DePalma v. State*, 225 Ga. 465, 469 (3) (169 SE2d 801) (1969), requires "specification in a burglary indictment of the particular business structure burglarized when that business operates from two or more locations in the county. [Cits.]" *Charles*, supra at 807. But we have declined to expand this holding beyond the specific situation in which a business owns more than one location within a county. *Mobley v. State*, 164 Ga. App. 154 (1) (296 SE2d 617) (1982). Even if we assume that the rule in a burglary prosecution may be applied to a case of arson, it is undisputed that the victims in this case owned only one home in Madison County and that their home was burned.

> The variance between the indictment and the proof did not misinform or mislead [appellant] in any manner that surprised him at trial or impaired his defense. Nor can he be subjected to another prosecution for the same offense. Accordingly, there was no fatal variance between the allegations and the proof. The trial court properly denied [appellant's] motion for a directed verdict on this ground.

(Citation omitted.) *Jackson v. State*, 217 Ga. App. 485, 490 (5) (458 SE2d 153) (1995) (physical precedent only)[2] (error in street address immaterial when victim owned no other residence).

In addition, the State presented evidence from which the jury could conclude that the address of the home in question was in fact Cleghorne Road at the time of the fire. Several witnesses testified that, at approximately the time of the fire, Madison County was in the process of implementing a 911 call system and standardizing road names in the county. The process took approximately one year to complete, and forms were required to be completed and sent to the county by the property owner. The owner of the property received the

---

[2] This decision was originally physical precedent only, but it has been cited on numerous occasions without noting its precedential status, although not for the proposition stated in this Division. See, e.g., *Smith v. State*, 270 Ga. 68, 69 (2) (508 SE2d 145) (1998); *Parker v. State*, 244 Ga. App. 419, 421 (3) (535 SE2d 795) (2000).

forms and forwarded them to the individuals renting the property, but "they weren't there long enough to send it in and get the address properly changed." Before this change, the address of the house was known as Cleghorne Road, the paved road upon which the mailbox for the residence was located. One of the owners of the house testified to the address and brought her cancelled checks, insurance policy on the house, and bills showing the address as Cleghorne Road. The volunteer fire department report of the fire also showed the address as Cleghorne Road. While some evidence was presented that the address had changed to George Washington Avenue by the time of the fire, this issue clearly was in dispute and hotly contested by the parties at trial. The trial court was correct in its assessment that such a disputed issue of fact was for the jury to decide and that a directed verdict of acquittal was inappropriate on this basis.

3. Finally, Brown complains that his confession was improperly admitted for the jury's consideration, contending that it was not freely and voluntarily given and that he did not knowingly and intelligently waive his rights. The trial court held a *Jackson-Denno* hearing and heard evidence from the chief deputy who interviewed Brown at the sheriff's office for "probably an hour or so." The deputy testified that he informed Brown of his rights by means of a standard form, which he read to Brown in its entirety and read again for the jury. The form also recorded information regarding Brown's age, level of education, and illiteracy; he informed the deputy that he could not read and write, although he had completed the ninth grade in school. Illiteracy, however, "does not dictate a determination that there has been no voluntary knowledgeable waiver." (Citation and punctuation omitted.) *Watson v. State*, 159 Ga. App. 618, 620 (2) (284 SE2d 636) (1981). The deputy testified that Brown did not have any questions regarding the waiver form, that he did not wish to have an attorney present, that he did not appear to be under the influence of alcohol or drugs, that he appeared to know what he was doing in giving his statement, and that the deputy did not promise him anything or threaten him in any way. After having the statement read to him, Brown signed the waiver agreeing "to answer questions and make a statement."

Brown testified that he "asked for a lawyer, I don't know how many times. Bunches and bunches. And he told me I did not need one." He also testified that the chief deputy cursed him and threatened to break his arm off and beat him to death with it. He denied having his rights read to him, although he acknowledged that he signed the waiver form, contending that "[h]e told me to sign it, and I signed it." He denied having made the written statement, contending that he "didn't have a choice. They wasn't letting me do nothing. They kept me in there. They told me I couldn't have an attorney."

He maintained that the deputies told him, "Robert said it. And I says, okay, whatever." He also contended he was denied food and drink, but he acknowledged that he did not ask for any and that he was allowed to go outside and smoke a cigarette.

Brown's live-in girlfriend testified that she sat outside in the hallway for "six or seven hours" while the sheriff's deputies were questioning Brown and that during that time she heard only four things from inside the room: She heard Brown ask for an attorney; she heard a deputy say "that he didn't need a d—n attorney"; she heard the deputy tell Brown "he was going to rip his arm off and beat him with it"; and she heard "slamming" and "cursing and hollering and real loud." The interviewing deputy denied having made any such statements. The witness also contended she asked a "fire marshal, fire chief, or something" for a lawyer for Brown and that he too responded that "he didn't need a d—n attorney." She also testified that Brown was not allowed food and drink, although he did step outside and smoke. The deputy, however, testified that Brown was allowed to get "drinks there from the drink machine" and to go home to retrieve some clothes.

The trial court found that the statement was freely and voluntarily made after Brown was advised of his *Miranda* rights, although noting that "of course, the State still has to prove that fact before the jury." The jury was instructed to this effect.

> Factual and credibility determinations of this sort made after a *Jackson-Denno* voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous. Since the trial court's determination here is supported by evidence (even though contradicted), it is not clearly erroneous and is therefore affirmed.

(Footnotes omitted.) *Hammett v. State*, 246 Ga. App. 287, 288 (1) (539 SE2d 193) (2000).

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED JUNE 19, 2001 — 

*James W. Smith*, for appellant.
*Robert W. Lavender, District Attorney, Marsha D. Cole, Assistant District Attorney*, for appellee.