# A07A1653. THE STATE v. STEPHENS.
### (657 SE2d 18)

MIKELL, Judge.

After allegedly causing a head-on collision in which a woman was killed, Eric Stephens was indicted for homicide by vehicle in the first degree, driving under the influence of drugs (cocaine), driving on the wrong side of the road, and driving while his license was suspended. Stephens filed a motion to suppress the results of his blood and urine tests, arguing that state troopers obtained the samples for the tests without a warrant and without his valid consent.[1] Following a hearing, the trial court entered a detailed order granting the motion to suppress. The state appeals, and we affirm.

In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's decision.[2] The trial court sits as the trier of fact; its findings are akin to a jury verdict and will not be disturbed if there is any evidence to support them.[3] Stated another way, "[i]n the absence of evidence of record *demanding* a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress."[4]

In the case at bar, the evidence does not demand a finding contrary to the judge's decision. The hearing transcript reflects that when Georgia State Patrol Trooper Jeremy Roberts arrived upon the scene of the fatal collision, Stephens was lying in a fetal position next to a parked vehicle, rocking back and forth, crying, and mumbling to himself. The trooper tried to talk to Stephens, who tried to respond, but was only coherent enough to give his first name. The trooper described Stephens as "obviously distraught." Stephens's wife then arrived on the scene and began to comfort Stephens, and emergency personnel transported him to the hospital. The trooper drove to the hospital and spoke to Mrs. Stephens while her husband was having x-rays taken. The trooper showed Mrs. Stephens a form asking for her husband's consent to give blood and urine samples. She explained that Stephens could not read.

---

[1] This case does not involve the doctrine of implied consent, OCGA § 40-5-55 (a), as the state does not allege that the investigating officer had probable cause to believe that Stephens was driving under the influence of alcohol or drugs. The implied consent statute "affords a suspect the opportunity to refuse to submit to a State-administered test of the suspect's blood, urine, or other bodily substances." (Citations omitted.) *State v. Collier*, 279 Ga. 316 (612 SE2d 281) (2005). See OCGA § 40-5-55 (a); *Hough v. State*, 279 Ga. 711, 713 (1) (a) (620 SE2d 380) (2005).

[2] See *State v. Brown*, 278 Ga. App. 457, 460 (629 SE2d 123) (2006).

[3] Id. at 459-460.

[4] (Citation and punctuation omitted; emphasis in original.) *State v. McKinney*, 276 Ga. App. 69, 71 (1) (622 SE2d 429) (2005).

When Stephens returned to the room, the trooper began talking to him. Stephens asked whether the woman in the collision had died. The trooper replied "yes," and Stephens became upset. Nevertheless, the trooper began reading Stephens the consent form, and he "became violent. He had to be forcibly restrained down." Mrs. Stephens entered the room to console her husband. The trooper finished reading Stephens the consent form while he was crying on his wife's shoulder. Stephens did not sign the form; his wife signed it for him. The trooper testified that Stephens was unable to sign the form because he was "cycling in and out between being calm and coherent and being aggressive," and holding on to his wife. Mrs. Stephens never indicated that her husband understood the consent form. However, the trooper testified that Stephens "freely" gave a blood sample and a urine sample. The trooper observed Stephens urinate into a cup.

Stephens testified that after the wreck, he went over to the victim and got into the car with her. While they were speaking, the victim had a convulsion. A nurse who happened to be driving behind Stephens stopped and came to help. Stephens started crying, got out of the car, and sat on the ground. He vaguely recalled speaking to the trooper at the scene and at the hospital. Stephens did not recall the trooper reading him the consent form or giving verbal consent to supply blood and urine samples. Upon questioning by the court, Stephens explained that he had never been in a wreck before and "just totally lost it" after speaking with the victim.

Based on the evidence adduced at the hearing, the trial court found that the state failed to prove that Stephens freely and voluntarily consented to the search. The court thus granted his motion to suppress any blood or urine sample seized from him, and all tests and reports derived therefrom. The state appeals, arguing we must apply the de novo standard of review, because "the evidence is uncontroverted and no question regarding the credibility of the witnesses is presented." The state asserts that the uncontroverted testimony of the trooper established that Stephens agreed voluntarily to provide blood and urine samples after the trooper explained to him the purpose of the request and the consequences of a positive drug test. The state's arguments lack merit.

A de novo standard of review applies only when the facts established at a hearing on a motion to suppress are undisputed, and no question of credibility is presented.[5] In this case, the credibility of the witnesses was entirely at issue, as demonstrated by the trial judge's

---

[5] See *Silva v. State*, 278 Ga. 506, 507-508 (604 SE2d 171) (2004); *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

insightful questioning of the trooper and of Stephens. Accordingly, the proper standard of appellate review is that the trial court's decision with regard to questions of fact and credibility is accepted unless it is clearly erroneous, and the evidence is construed most favorably toward upholding the trial court's findings and judgment.[6]

"A suspect's Fourth Amendment right to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood. So too is the extraction of blood a search within the meaning of the Georgia Constitution."[7]

> It is well settled . . . that a search conducted without a warrant issued upon probable cause is *per se* unreasonable[,] subject only to a few specifically established and well-delineated exceptions. It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.[8]

When relying on the consent exception to the warrant requirement, the state has the burden "to demonstrate that the consent was voluntarily given, and not the result of duress or coercion, express or implied."[9] "Whether an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances."[10] Furthermore, our Supreme Court has held that "mental condition is surely relevant to an individual's susceptibility to police coercion."[11] Thus, "in examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of . . . the possibly vulnerable subjective state of the person who consents."[12]

The transcript in the case at bar reflects that Stephens's mental condition was obviously vulnerable. Further, Stephens could not read, had to be forcibly restrained while the consent form was being

---

[6] See *Brown*, supra; see also *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[7] (Citations and punctuation omitted.) *State v. Poppell*, 277 Ga. 595 (2) (592 SE2d 838) (2004). An accused has the right to refuse testing of blood and urine under the doctrine of implied consent, OCGA § 40-5-55 (a). See footnote 1, supra.

[8] (Citations and punctuation omitted.) *Schneckloth v. Bustamonte*, 412 U. S. 218, 219 (93 SC 2041, 36 LE2d 854) (1973).

[9] (Citation and punctuation omitted.) *Butler v. State*, 272 Ga. App. 557, 558 (612 SE2d 865) (2005). See also *Raulerson v. State*, 268 Ga. 623, 625 (2) (a) (491 SE2d 791) (1997).

[10] (Punctuation and emphasis omitted.) *State v. Tye*, 276 Ga. 559, 561 (2) (580 SE2d 528) (2003), citing *Schneckloth*, supra at 221 (I).

[11] (Citation and punctuation omitted.) *Tye*, supra.

[12] *Schneckloth*, supra at 229 (II) (B).

read to him initially, was weeping on his wife's shoulder while the remainder of the form was read to him, and never signed the form. Although Mrs. Stephens signed the form, the trooper admitted that she never indicated that Stephens understood it. Construing the evidence most favorably to uphold the trial court's findings and judgment, the trial court's conclusion that Stephens did not make a free and voluntary decision to consent to giving blood and urine samples was not clearly erroneous. Even if Stephens submitted to the withdrawal of his blood, and did give a urine sample, these acts would not demonstrate voluntary consent within the meaning of search and seizure jurisprudence. "[A] prosecutor who seeks to rely upon consent to justify the lawfulness of a search has the burden of proving that the consent was, in fact, freely and voluntarily given, and this burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."[13] In this case, the trial court correctly determined that the evidence cannot be construed as anything more than mere acquiescence. The court did not err in granting the motion to suppress.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 11, 2008.

*Joseph K. Mulholland*, District Attorney, *Charles M. Stines*, Assistant District Attorney, for appellant.
*Ernie M. Sheffield, Richard Parker*, for appellee.

---

[13] (Citation and punctuation omitted.) *Radowick v. State*, 145 Ga. App. 231, 239-240 (4) (244 SE2d 346) (1978).