## A09A0430. KENNEDY et al. v. THE STATE.
### (680 SE2d 478)

SMITH, Presiding Judge.

James Williams and Antonio Kennedy were convicted of the September 23, 2005 burglary of a Chevron station at Exit 51 in Coweta County. Their motions for new trial were denied, and they appeal, enumerating as error the denial of their motions to suppress, the admission of similar transaction evidence, and the general grounds. Finding no error, we affirm.

1. Williams and Kennedy moved to suppress evidence of stolen items found in their vehicle by police at the time of their arrest for an October 2005 offense introduced by the State as a similar transaction. The trial court denied the motion on the basis that the officers were authorized to search appellants' vehicle for weapons to ensure their personal safety.

In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's decision. The trial court sits as the trier of fact; its findings are akin to a jury verdict and will not be disturbed if there is any evidence to support them. Stated another way, in the absence of evidence of record demanding a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress.

(Citations, punctuation, footnotes and emphasis omitted.) *State v. Stephens*, 289 Ga. App. 167 (657 SE2d 18) (2008).[1] We may also "consider trial testimony in addition to the testimony submitted during the motion to suppress hearing. [Cit.]" *Smith v. State*, 277 Ga. App. 81, 81, n. 2 (625 SE3d 497) (2005).

Viewed in this light, the evidence shows that on September 23, 2005, at approximately 4:45 in the morning, a Chevron station at Exit 51 on Interstate 85 was burglarized and cigarettes were stolen. Two weeks later, on October 7, 2005, a Chevron station at Exit 47 was burglarized also at about 4:45 in the morning, when it was still dark. The Newnan police department responded to the burglary call minutes later. A Coweta County sheriff's lieutenant heard the alarm call, and decided to check nearby exits for criminal activity because burglars "tend to run the interstate hitting each exit until they get satisfied with what they receive." He went to the next exit and checked a Chevron gas station that he knew was closed at that hour. The station area was very poorly lit, and he saw an older model Suburban parked in "the darkest corner of the lot" with the hood up and the driver's side door open. He asked the two men with the Suburban, identified as Williams and Kennedy, if he could help them, and they told him their motor was overheating.

The officer became suspicious because two other gas stations nearby were open, and because it seemed to him that "if I'm going to work on a truck, I'm going to find me some light." In addition, the appellants were "jittery" and "nervous," more so than they should have been if they had merely broken down. They kept moving in and out of the Suburban, opening and closing the doors, and it appeared to the officer that they were trying to conceal the interior of the

---

[1] Because the officer's testimony was not entirely consistent and somewhat contradictory, this is not a case "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, [and] the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citations and punctuation omitted.) *State v. Woods*, 280 Ga. 758 (632 SE2d 654) (2006). Compare *Stephens*, supra, 289 Ga. App. at 168-169 (credibility of officer at issue when trial court questioned officer and Stephens regarding circumstances of consent to testing).

truck from his view. He could not see through the windows because they were "pretty darkly tinted" and it was dark outside. He considered it a safety issue because he did not know "if they were going to bring out a weapon." His concern increased when the men separated and one of them "got around behind" his patrol car. Initially the officer testified that he thought the men separated because they were "fixing to go in opposite directions," but later added that "there was some safety issues there." While the officer testified that he felt threatened, he did not do a pat-down search. He explained that his backup was on the way and he was "outnumbered. There's two of them and one of me."

While a rear door on the vehicle was open, the officer saw several bags in the back seat of the truck. When the backup officer arrived, the first officer discussed with him the bags he had observed. One man was standing beside the truck, and the backup officer instructed him to go to the front of the truck with the other man. The backup officer looked into the rear seat, "pulled the bags out after seeing the contents of the bags, and he dumped the contents out on the pavement." The bag contained stolen cigarettes. The officers "looked in the truck even more for weapons." Appellants were placed under arrest and subsequently charged with only the September 23 burglary.

> The search of an automobile's passenger compartment, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. Georgia decisions agree that in order to justify a search of a vehicle for weapons, some conduct on the part of the occupants such as furtive movements or other indications of danger to the officer must be shown, and the officer must have an objectively reasonable belief that the occupants of a vehicle are potentially dangerous.

(Citations, punctuation and footnotes omitted.) *Bell v. State*, 295 Ga. App. 607, 611 (2) (672 SE2d 675) (2009).

In *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004), the Supreme Court found that the officer's belief that appellants were "potentially dangerous was objectively reasonable. [Cit.]" Id. And under the applicable standard of review here, not applied in *Silva*, we cannot say that the evidence *demands* a contrary finding. The trial

court was authorized to conclude that, like Silva, the appellants acted suspiciously, both in attempting to conceal the contents of the Suburban and in apparently moving to surround the officer. The officer had no plans to arrest appellants,

> and thus knew [they] would be returning to [their] car, with the unknown and potentially dangerous item [inside]. In such circumstances, a reasonably prudent officer would have concerns for his safety, and the officer in this case acted appropriately. An officer who has detained an occupant of a motor vehicle may conduct a search founded on the reasonable belief, based on articulable facts and rational inferences, that the occupant may gain immediate control of a weapon. [Cits.]

Id. The fact that appellants were outside the vehicle "when the search was conducted does not change the matter; a suspect re-entering his car after an investigative detention will have access to any weapon therein. [Cit.]" Id. Here, in addition, one of the appellants was quite close to the vehicle and had to be instructed to move as the second officer approached. Under these circumstances, the trial court did not err in concluding that "Georgia law gives the officer the right to find out what's in their bag for their own protection" and denying the motion to suppress.

2. Williams and Kennedy next complain of the admission of evidence of the October 2005 burglary as a similar transaction to the September 2005 burglary with which they are charged in the present case. In the similar transaction, at about 4:45 in the morning on October 7, 2005, a large chunk of concrete was thrown through the front glass door of the Chevron station at Exit 47 on Interstate 85, and cigarettes were stolen, mostly single packs and two-pack combinations that were on display. When appellants were arrested in this case at the Chevron at Exit 51, the police found inside their Suburban two large black plastic garbage bags, one containing single packs and two-pack combinations, and the other about a dozen cartons of cigarettes. The front seat of the Suburban had "shards or slivers of glass" in it, and a large chunk of concrete and an empty black plastic bag were on the ground next to the vehicle.

Williams and Kennedy were charged in the present case with participating in a "smash and grab burglary" at approximately 4:45 in the morning on September 23, 2005. A large rock was thrown through the front glass door of the Chevron station at Exit 51 on Interstate 85, the scene of appellants' later arrest in October 2005. About 50 cartons of cigarettes and a small amount of cash were stolen. Some black plastic garbage bags that the owner did not sell in

the store were left behind.

These similarities "are more than adequate to satisfy the State's burden of showing a sufficient connection between the similar offense and the offense for which the accused is being tried such that proof of the former tends to prove the latter. [Cit.]" *Johnson v. State*, 296 Ga. App. 112, 114 (4) (673 SE2d 596) (2009) (both offenses involved theft of copper pipe at night from unoccupied buildings under construction). The trial court did not abuse its discretion in admitting the similar transaction.

3. Williams and Kennedy assert the general grounds. We find the evidence sufficient to uphold the convictions under the standard established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accord *Jackson v. State*, 217 Ga. App. 485, 487 (1) (458 SE2d 153) (1995) (physical precedent only) (evidence of unexplained possession and concealment of goods stolen during crime, which had occurred shortly before appellant's arrest, was sufficient to establish guilt).[2]

*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED JUNE 16, 2009.

*Joseph W. Jones, Jr.*, for appellants.

*Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney*, for appellee.

---

[2] As we have noted on several previous occasions, this decision, while originally physical precedent only, has been cited repeatedly with approval and without notation of its precedential status. *Finley v. State*, 252 Ga. App. 66, 67 (1), n. 2 (555 SE2d 523) (2001); *Brown v. State*, 250 Ga. App. 147, 149 (2), n. 2 (550 SE2d 701) (2001).