A10A0923. WILSON v. THE STATE.
(702 SE2d 2)

ADAMS, Judge.

Following a bench trial, Kendrick L. Wilson was convicted of possession of marijuana with intent to distribute, possession of a firearm during the commission of a crime, and possession of marijuana. On appeal, he contends the trial court erred by denying his motion to suppress and by denying him first offender status.

On appeal of a trial court's order on a motion to suppress, we uphold the court's findings based upon conflicting evidence if there is any evidence to support them; we uphold the trial court's findings of fact and credibility unless clearly erroneous; and we construe the evidence in favor of the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); see also *Jackson v. State*, 258 Ga. App. 806, 807-808 (2) (575 SE2d 713) (2002). Moreover, "in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial." (Footnote omitted.) *McDevitt v. State*, 286 Ga. App. 120 (648 SE2d 481) (2007).

1. Construed in favor of the verdict, the evidence shows that on the afternoon of Monday, July 10, 2006, Georgia State Trooper Ray Malone, a canine handler for the Criminal Interdiction Unit that patrols the interstates for criminal activity, was sitting stationary around mile post 112 on Interstate 20 in an attempt to intercept illegal drugs moving from Atlanta to other states, such as South Carolina. He was facing westbound, watching eastbound traffic, and had to turn his head to see the back of Wilson's car. When Wilson's car came by, Malone saw a bracket around the car's license plate that blocked view of the registration expiration date. Malone pursued, even riding alongside Wilson for a period of time in order to see if he was wearing a seatbelt. At about mile marker 117 or 118, Malone pulled Wilson over based on the alleged violation of OCGA § 40-2-41.

Under OCGA § 40-2-41, the license tag for "every vehicle required to be registered under this chapter" shall be plainly visible. The same statute provides that a person cannot attach any item to "any motor vehicle required to be registered in the state" that

obstructs or hinders the clear display and legibility of a license plate. OCGA § 40-2-41. As a consequence, Wilson argues the officer had no basis to effect a stop of his car because his car was registered in South Carolina and had license tags for that state. But this Court has held that "[a]lthough certain portions of OCGA § 40-2-41 apply only to vehicles registered in Georgia, the [visibility and display] portions of the statute apply to any vehicle whether registered in Georgia or out of state." *State v. Davis*, 283 Ga. App. 200, 201 (1) (641 SE2d 205) (2007). See also *Nelson v. State*, 247 Ga. App. 455 (1) (544 SE2d 189) (2001). We decline Wilson's request to overrule this precedent, which is squarely on point. Accordingly, there was evidence to support the trial court's finding that the officer had a basis for making the stop because his license tag was in violation of Georgia law.

2. Wilson contends that after Malone dealt with the tag problem, he had no reasonable suspicion of other criminal activity sufficient to detain Wilson any further and that his further detention was therefore not supported by probable cause.

Malone testified to the following: after he stopped the car he noticed "an overwhelming odor" of air freshener coming from the passenger side; he asked for and received Wilson's license and proof of insurance; he directed Wilson to the rear of the car to talk about the tag violation; Wilson, who was at all times cooperative, agreed to have the tag bracket removed; Malone asked Wilson where he and his passenger had been and where they were going; Wilson replied that they went to Atlanta on Friday to visit his sister and were headed back to South Carolina, but he was unable to say where in Atlanta his sister lived other than in the Atlanta area; Wilson appeared nervous about having the conversation, his hands were shaking a bit, and his nervousness increased over time; Malone spoke to the passenger "to confirm Mr. Wilson's story"; the passenger stated that they had come to Atlanta on Sunday to see a friend; Wilson was unable to explain why their stories were conflicting and he changed his story; during this time, Malone was completing the paperwork associated with the warning. Malone claims he also was waiting on verification of Wilson's license through his on-board computer link, which takes between two and eight minutes. Malone then returned the license and insurance papers to Wilson along with a warning about the tag violation, but Wilson was not free to leave.

Malone testified that people with drugs in a car often spray air freshener to mask the odor; that he found suspicious Wilson's lack of knowledge of the precise location of his sister's house; that Wilson's nervousness was different from the average person he has stopped because it was increasing during the conversation; that the difference between Wilson's and the passenger's stories about their trip was suspicious; and that these "indicators" told him that Wilson

might have drugs in his car. So, about five or six minutes after the initial stop, Malone told Wilson he was going to call for backup and perform a free air search. Malone also asked Wilson for consent to search, which Wilson denied. Malone testified that Wilson's refusal to consent was an additional indicator of something in the car.

When backup arrived about three to five minutes later, Malone used his dog to do a free air search, and the dog indicated the presence of drugs. The ensuing search revealed a loaded .45 caliber pistol in the glove box and 844 grams (about two pounds) of marijuana in a duffle bag in the trunk. Wilson was arrested. From pullover to arrest, the stop lasted 20 to 25 minutes. At the jail, six grams of marijuana were found in Wilson's shoe.

(a) Wilson contends the stop was unreasonably prolonged because Malone had no basis to question him after he completed the warning ticket for the tag violation.

During a valid traffic stop,

> an officer may ask the driver questions wholly unrelated to the traffic stop or otherwise engage in "small talk" with the driver, "so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop." *State v. Davis,* 283 Ga. App. 200, 203 (2) (641 SE2d 205) (2007).

*Sommese v. State,* 299 Ga. App. 664, 669 (1) (b) (683 SE2d 642) (2009).

> "A reasonable time to conduct a traffic stop 'includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or a written warning. A reasonable time also includes the time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.' (Citations and footnotes omitted.)"

Id. Finally, so long as the traffic stop is not unreasonably prolonged, the officer does not need articulable suspicion of criminal activity in order to engage in unrelated questioning. Id.

Because the evidence does not show that the traffic stop was unreasonably prolonged, the officer's questioning was allowed. The videotape shows that Malone completed the questioning and confronted Wilson with the discrepancies between his and the passenger's stories within four or five minutes of the initial stop. For this

time, Malone was addressing the tag violation and completing the necessary paperwork, which he had yet to hand over. Thus, there was some evidence to support the trial court's decision that the stop was not unreasonably prolonged by the unrelated questioning. See *Salmeron v. State*, 280 Ga. 735, 737-738 (1) (632 SE2d 645) (2006).

Wilson strongly argues that the videotape shows Malone never performed a computer check of his license and insurance. But the videotape does not show what occurred during the brief time that Malone returned to his car during the stop, and Malone testified that he did run the license. This discrepancy created an issue of fact for the court. Even so, the videotape shows that Malone was occupied by handwriting the warning paperwork for almost all of the time before he questioned the passenger.

(b) Wilson contends Malone did not have reasonable suspicion of other illegal activity once he completed the purpose of the initial stop and that his detention past that time violated the Fourth Amendment. But by that time, Malone had smelled the air freshener which is often used to mask the smell of illegal drugs, observed increasingly nervous behavior, and heard conflicting stories from Wilson and the passenger about their trip. Malone was also aware that Atlanta serves as a hub for drug activity and that Interstate 20 serves as a "major thoroughfare for drugs." Accordingly, he decided to detain Wilson in order to perform a free air search of the car.

"To determine whether a reasonable articulable suspicion exists, courts must look to the totality of the circumstances." *State v. Thompson*, 256 Ga. App. 188, 189 (569 SE2d 254) (2002). It is true that "nervousness alone is not sufficient to establish reasonable suspicion to detain and investigate for illicit drug activity." (Footnote omitted.) *Gonzales v. State,* 255 Ga. App. 149, 150 (564 SE2d 552) (2002). And an air freshener is a legal substance that, standing alone, is insufficient to justify further detention. See *State v. Thompson*, 256 Ga. App. at 189. But, here, these facts combined with Wilson's and the passenger's conflicting stories, Wilson's inability to articulate where his sister lived, and Malone's knowledge of drug trafficking in the area were sufficient to support detention for further investigation, such as a free air search. See, e.g., *Rucker v. State*, 266 Ga. App. 293, 294 (1) (596 SE2d 639) (2004) (reasonable suspicion existed where defendant continued to drive for one to two miles after being signaled to stop, there was an unusual amount of movement in the vehicle, and defendant approached patrol car rather than waiting for the officer to approach).

The trial judge found Malone to be "a highly credible witness who did not exaggerate any facts and called it exactly like he saw it."

Wilson's several arguments that Malone's testimony is not credible[1] as well as arguments about discrepancies in his testimony presented issues for the trial judge to resolve. Another trial judge might come to a different conclusion based on similar facts. See, e.g., *State v. Long*, 301 Ga. App. 839 (689 SE2d 369) (2010) (affirming grant of motion to suppress); *State v. Connor*, 288 Ga. App. 517 (654 SE2d 461) (2007) (same). But we cannot say the trial court's conclusions in this case were clearly erroneous. Cases such as *Long* and *Conner* are distinguishable because in those cases the State was appealing the grant of a motion to suppress.

3. Finally, Wilson contends the trial court erred by failing to grant him first offender status because it refused to consider that status, it used a mechanical sentencing formula, and the State's evidence of prior convictions was flawed. "[T]he trial court is not required to render such a first offender status merely because it is requested even where no previous offense is shown, and the trial court may give in its discretion any sentence prescribed by law for the offense." *Todd v. State*, 172 Ga. App. 231 (2) (323 SE2d 6) (1984). "We vacate and remand only when a trial court refuses to consider first offender treatment as a possible sentence. [Cit.]" *Shell v. State*, 264 Ga. App. 547, 550 (2) (591 SE2d 450) (2003).

But Wilson has not shown how the court used a mechanical sentencing formula nor how the court refused to exercise its discretion. "There is a presumption that a sentence was correctly imposed, and the burden of showing that a sentence was not correctly imposed is with the party who asserts its impropriety." (Citation and punctuation omitted.) *Lynn v. State*, 236 Ga. App. 600, 604 (3) (512 SE2d 695) (1999). Moreover, the record shows that Wilson requested first offender treatment and the court heard the State's response. Thus, the record reflects that the court considered first offender status and rejected it. Finally, Wilson has not proved his remaining assertions that statements made by the State about his criminal background were untrue. Therefore there is no basis for reversal on this point.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 10, 2010 —
RECONSIDERATION DENIED OCTOBER 1, 2010 — ▮▮▮▮▮▮▮▮

*Bryan D. Scott*, for appellant.

---

[1] For example, Malone admitted that there is no indication on the videotape of the traffic stop that Wilson was nervous. He said there were such indications off camera, but the videotape shows that once Wilson got out of the car, he was not off camera until Malone decided to do the free air search. The videotape also shows that Wilson did not appear nervous. Also, at trial Malone did not recall Wilson clenching his hands. Yet at the motion hearing, Malone testified that Wilson did clench his hands. The videotape does not reveal any hand clenching.

*Fredric D. Bright, District Attorney, Alison T. Burleson, Assistant District Attorney*, for appellee.