**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 21, 2013**

# In the Court of Appeals of Georgia

A13A0096. MOORE v. THE STATE.

MILLER, Judge.

Following a bench trial, Jason Moore was convicted of trafficking cocaine (OCGA § 16-13-31 (a) (1)), possession of marijuana (OCGA § 16-13-30 (a)), and failure to maintain lane (OCGA § 40-6-48). On appeal, Moore contends that the trial court erred in denying his motion to suppress because the officer impermissibly expanded the duration and scope of the traffic stop, and that the officer lacked a reasonable suspicion to justify the continued detention. We discern no error and affirm.

In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's decision. The trial court sits as the trier of fact; its findings are akin to a jury verdict and will not be disturbed if there is any evidence to support them. Stated another way, in the absence of evidence of record demanding a finding

> contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress.

(Citations, punctuation, and footnotes omitted.) *State v. Stephens*, 289 Ga. App. 167 (657 SE2d 18) (2008).

So construed, the evidence shows that on the night of September 16, 2009, a Douglasville Police Department officer was patrolling Interstate 20 near Highway 5. Around midnight, the officer observed Moore driving his vehicle too closely behind another vehicle and failing to maintain his lane. The officer then initiated a traffic stop.

When the officer approached the vehicle, Moore provided his driver's license and insurance, as well as a copy of the rental agreement for the vehicle. After reviewing the documentation provided, the officer told Moore that he would be issuing only warning citations. The officer observed that Moore's hands were shaking excessively, his right leg was bouncing up and down, and he appeared to be extremely nervous. Since Moore was excessively nervous, the officer asked Moore to step out of his vehicle. Upon exiting his vehicle, Moore quickly walked to the officer's patrol vehicle and attempted to get in. The officer stopped Moore, and then began writing the first warning citation.

2

Despite being told that he would only receive a warning, Moore's nervousness escalated. Moore repeatedly rubbed his shirt, was overly talkative, fidgeted, and paced back and forth. The officer stated that he then called for backup due to Moore's continued nervousness, and another officer arrived in less than two minutes. While the officer was filling out the first warning citation, he engaged in a conversation with Moore. The officer stated that Moore hesitated when answering questions about his itinerary. Moore first stated that he left Alabama after work sometime round 5:00 clock earlier that evening to visit a girl who lived in Stonecrest. When questioned further, Moore stated that he left work earlier than 5:00 p.m., but he did not provide a clear answer. Moore stated that he was attempting to return to Alabama before his girlfriend found out that he went to visit another woman in Georgia.

Approximately six minutes into the stop, the officer called for a K-9 unit. While waiting for the K-9 unit to arrive, the officer completed the first warning citation and gave it to Moore. The officer returned Moore's driver's license, and told Moore that the license was not needed to complete the second citation. Soon thereafter, however, the officer asked Moore to furnish his driver's license again because the officer forgot to run his driver's license through dispatch. Before completing the second citation, the officer began asking Moore additional questions

3

about the rental vehicle. Moore explained that he was in a rental car because his own vehicle was being repaired.

The K-9 unit arrived as the officer completed the second warning citation. The drug dog conducted an open-air search around the vehicle and alerted to the presence of narcotics while the officer was in the process of calling in Moore's driver's license. The officer subsequently searched Moore's vehicle and found the marijuana and cocaine for which he was ultimately charged and convicted.

On appeal, Moore argues that the officer impermissibly expanded the scope and duration of the stop by questioning him about matters unrelated to the traffic violations. We disagree.

On the issue of whether a stop has been unreasonably prolonged, we defer to the trial court's determination unless the facts are truly egregious. See *Hayes v. State*, 292 Ga. App. 724, 729 (2) (c) (665 SE2d 422) (2008).

> During a valid traffic stop, an officer may ask the driver questions wholly unrelated to the traffic stop or otherwise engage in "small talk" with the driver, so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop. A reasonable time to conduct a traffic stop includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or a written warning. A reasonable time also includes the time necessary to run a

4

computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.

(Citations and punctuation omitted.) *Wilson v. State*, 306 Ga. App. 286, 288 (2) (a) (702 SE2d 2) (2010). Moreover, an officer may use a drug sniffing dog to conduct an open-air search of a vehicle's exterior during a valid traffic stop without implicating the Fourth Amendment, if the same is performed without unreasonably extending the stop. *Langston v. State*, 302 Ga. App. 541, 544 (691 SE2d 349) (2010).

Here, there is no dispute that the initial stop was authorized. Contrary to Moore's claims, the purpose of the detention was not fulfilled when the officer indicated that he would only be giving Moore a warning citation. See *Woodard v. State*, 289 Ga. App. 643, 647 (1) (a) (658 SE2d 129) (2008). The officer was permitted to continue the detention while he verified Moore's license, insurance, and registration, completed any paperwork, and checked for any outstanding warrants. See *Wilson*, supra, 306 Ga. App. at 288 (2) (a). The officer was also authorized to engage in small talk and question Moore about his itinerary while he completed the warning citations. Id.; see also *Pitts v. State*, 221 Ga. App. 309, 311 (2) (471 SE2d 270) (1996).

Although Moore argues that the length of stop – approximately 13 minutes – was unreasonable, the record shows that Moore's own actions prevented the officer from completing the warning citations sooner. Notably, Moore exhibited increasing nervousness during the stop, and when Moore was asked to exit the vehicle, Moore immediately attempted to enter the officer's patrol car. The officer testified that he could not focus solely on writing the citations because he was concerned about Moore's extreme nervousness, and while he was engaging Moore in conversation, he was actively working on completing the warning citations. The officer also testified that the time it took him to complete the warning citations in this case was consistent with the duration of other stops where he issued multiple warning citations and the driver was exhibiting criminal indicators. We accept the trial court's decision with regard to questions of fact and the officer's credibility, and under the circumstances set forth above, the trial court did not clearly err in concluding that the stop was not unreasonably prolonged. See *Hayes*, 292 Ga. App. at 731 (2) (e) (ten minute period police officer took to question defendant to evaluate defendant's nervousness and complete warning citation did not unreasonably prolong traffic stop); see also *Langston*, supra, 302 Ga. App. at 545 (officer did not prolong stop in order to conduct an open air search because he had not yet received results of license check).

6

Since the stop was not unreasonably prolonged, we need not consider Moore's argument that the officer lacked a reasonable suspicion to justify his detention. See *Wilson*, supra, 306 Ga. App. at 288 (2) (a) ("[S]o long as the traffic stop is not unreasonably prolonged, the officer does not need articulable suspicion of criminal activity in order to engage in unrelated questioning.") (citation and punctuation omitted). Therefore, we affirm the trial court's denial of Moore's motion to suppress.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*