304 Ga. 406
FINAL COPY

S18A0711. KENNEBREW v. THE STATE.

PETERSON, Justice.

Phillip Warren Kennebrew brings this interlocutory appeal of the trial court's denial of his motion to suppress certain physical evidence the State wishes to introduce in prosecuting him for murder. We previously reversed Kennebrew's convictions for malice murder and other crimes on the ground that he received ineffective assistance of counsel at trial, including counsel's failure to pursue suppression of the evidence in question. See Kennebrew v. State, 299 Ga. 864 (792 SE2d 695) (2016). When new counsel filed a motion to suppress on remand, the trial court denied the motion, finding that the evidence — obtained from two backpacks seized from the dorm room of Kennebrew's girlfriend when he was arrested there — "would have inevitably been discovered through a lawful inventory search." Kennebrew argues that our ruling in his prior appeal constitutes law of the case precluding denial of his motion to suppress. Alternatively, he argues that the trial court was wrong on the

merits because the evidence was not admissible under an inevitable discovery theory. Whether or not our prior opinion precluded the trial court from denying the motion to suppress, the trial court's ruling was wrong on the merits, and we reverse.

As we previously explained, Kennebrew was tried with two others for robbing and murdering Breyon Alexander. DNA evidence and witness testimony placed Kennebrew at the victim's apartment at the time of the crimes, and Kennebrew pursued a mere presence defense. But several pieces of evidence recovered from two backpacks belonging to Kennebrew undermined this defense, particularly a knife the State suggested had been used in the stabbing of the victim, shotgun shells like some that had been stolen from the victim's apartment and recovered from a co-defendant's house, and bullets like some that had been stolen from the victim's apartment. Id. at 869 (2) (a) (1). Police seized the backpacks from the college dorm room of Kennebrew's girlfriend when they placed Kennebrew under arrest pursuant to an arrest warrant. Id. at 868-869 (2) (a) (1). Convicted of malice murder and other crimes at an August 2012 trial, Kennebrew was sentenced to life plus 25 years.

We reversed Kennebrew's convictions on appeal, based on two areas of

2

ineffectiveness by his trial counsel: (1) counsel's failure to object when the prosecutor commented during closing argument on Kennebrew's silence; and (2) counsel's failure to pursue suppression of the evidence recovered from Kennebrew's backpacks. We noted that the police seized the backpacks only after Kennebrew had been handcuffed and removed from the room and did not search the backpacks until six days later, meaning that the State could not avoid the Fourth Amendment's warrant requirement under the search incident to arrest exception. Id. at 869-871 (2) (a) (1). And we said that although the *seizure* of the backpacks may have been lawful based on the consent that Kennebrew's girlfriend apparently gave the police to search her dorm room and take items identified as Kennebrew's, that consent could not authorize the police to *search* a closed container that the police knew belonged to someone else. Id. at 869 (2) (a) (1) n.3. We concluded that trial counsel's failure to seek suppression of the evidence, coupled with his failure to object to the prosecutor's comment during closing argument, prejudiced Kennebrew's defense such that a new trial was required, given that the State's case was not overwhelming and the State emphasized the evidence taken from the backpacks. Id. at 873-874 (2) (b).

On remand, new counsel filed a motion to suppress evidence collected

3

from Kennebrew's backpacks. Denying the motion in a June 2017 order, the trial court concluded that the seizure of Kennebrew's backpack was "reasonable based upon facts and circumstances presented by the State at the hearing and furthermore that the items inside the backpack would have inevitably been discovered through a lawful inventory search." The trial court found that, after police handcuffed Kennebrew and removed him from his girlfriend's dorm room on October 20, 2011, she gave police her consent to search her room. She also identified Kennebrew's belongings to police, the trial court found. The trial court recounted testimony by DeKalb Police Sgt. Neal that, based on department policy, he could not have left Kennebrew's items with the girlfriend, because police are responsible for those items in the possession of an arrested person and the girlfriend could have destroyed or hidden items. The trial court also relied on DeKalb Police testimony that for safety of police, chain of custody purposes, and to protect the department from potential false claims of theft, DeKalb Police policy mandates that closed containers be inventoried prior to their submission to the property room. The trial court found that Kennebrew's backpack "was briefly inventoried by Sgt. Neal at the scene for officer safety and then secured by CSI Woolford" and noted that the State conceded that CSI Woolford

4

"searched" the backpack six days later, i.e., October 26, 2011.[1] We agreed to hear Kennebrew's interlocutory appeal of that ruling.

On appeal, Kennebrew argues both that our decision in his prior appeal precluded the trial court from denying his motion to suppress and that the discovery of the evidence in the backpacks cannot be justified as "inevitable" through a lawful inventory search.[2] Because we agree that the State has not met its burden of showing that any search of the bags qualified as an inventory search, and because the State cannot avoid suppression of the evidence recovered on an inevitable discovery theory, either, we need not reach the law of the case argument raised by Kennebrew.[3]

---

[1] The trial court's order did not mention search warrants for the backpacks that the State obtained on remand from our prior decision, at which point the backpacks apparently were in the possession of the District Attorney's office. The State expressly disclaims reliance on those search warrants in arguing for affirmance of the trial court's order, and so we need not consider Kennebrew's argument on appeal that the search warrants obtained by the State on remand could not cure the constitutional defect in the search of the bags.

[2] Defense counsel suggested at oral argument that the seizure of the bags may have been unlawful, stating that he believed Kennebrew had raised such an argument in his motion to suppress. But Kennebrew does not appear to have preserved that argument below, and he does not include it in his enumerations of error or supporting briefing, so we do not consider it. See Clay v. State, 290 Ga. 822, 829 (2) (A) n.2 (725 SE2d 260) (2012) (legal issues must be raised and ruled on below in order to be properly considered on appeal, and parties may not add enumerations of error by way of oral argument).

[3] We note that it's not obvious from the record that Kennebrew preserved his law of the case argument.

In reviewing a ruling on a motion to suppress, we review the trial court's factual findings for clear error and its legal conclusions de novo. See Vansant v. State, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). In addition, in reviewing such a ruling,

> an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. An appellate court also generally must limit its consideration of the disputed facts to those expressly found by the trial court.

Caffee v. State, 303 Ga. 557, 557 (814 SE2d 386) (2018) (citations and punctuation omitted).

The State argues for affirmance of the trial court's order under either an inventory search or inevitable discovery theory. Specifically, the State argues that DeKalb Police performed two inventory searches — once at the scene of the seizure of the backpacks on October 20, and again on October 26. We consider each of these possibilities in turn.

1. The United States Supreme Court has held that an inventory search — i.e., the search of the personal property of a person under lawful arrest as part of a routine administrative procedure incident to booking and jailing the suspect — is an exception to the warrant requirement. See Illinois v. Lafayette, 462 U.

S. 640 (103 SCt 2605, 77 LE2d 65) (1983). In order to qualify as an inventory search, the search must be carried out in accordance with standardized procedures. See Florida v. Wells, 495 U. S. 1, 3-4 (110 SCt 1632, 109 LE2d 1) (1990) ("standardized criteria or established routine must regulate the opening of containers found during inventory searches") (citations omitted); Colorado v. Bertine, 479 U. S. 367, 375-376 (107 SCt 738, 93 LE2d 739) (1987) (police discretion in conducting inventory search must be "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity"); Lafayette, 462 U. S. at 648 ("[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession in accordance with established inventory procedures."). This rule "is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Wells, 495 U. S. at 4. The State bears the burden of showing that the requirements of an exception to the warrant requirement have been met. Coolidge v. New Hampshire, 403 U. S. 443, 455 (91 SCt 2022, 29 LE2d 564) (1971), overruled on other grounds by Horton v. California, 496 U. S. 128 (110 SCt 2301, 110 LE2d 112) (1990).

(a) The State contends that the trial court's finding that "the backpack in this case was briefly inventoried by Sgt. Neal at the scene" amounts to a finding that an inventory search was performed on October 20. But this factual finding is clearly erroneous: the record contains no evidence whatsoever that *Sgt. Neal* searched or conducted any sort of inventory of any backpack on October 20. The State seeks to salvage the core of this finding by claiming that the record shows that Sgt. Neal was present while CSI Woolford searched the backpacks when they were seized on October 20. But even if the trial court's statement were meant to reflect a finding that law enforcement actually opened the bags and searched their contents on that date, such a finding would find no support in the record.

The State's position on appeal — that CSI Woolford performed an inventory search at the scene on October 20 — both is not supported by any evidence and conflicts directly with its concession at multiple points during the suppression hearing that the backpacks were not searched or "fully inventoried" until six days after Kennebrew was arrested. The State points to testimony from Sgt. Neal at the suppression hearing that it says shows CSI Woolford conducted an inventory search on October 20. But that testimony does not show that CSI

Woolford actually looked inside the bags on that date.[4] And at oral argument before this Court, the State conceded that the record contains no property sheet showing that CSI Woolford opened the bags then.[5] The State thus failed to carry its burden to show that an inventory search was done on October 20, and absent such a search, the motion to suppress cannot be denied on that ground.

(b) The State also argues that an inventory search of the backpacks was performed on October 26. Again, the State has failed to meet its burden of proving that the requirements of the inventory search exception have been met as to the October 26 search.

Here, the trial court apparently credited DeKalb Police testimony that for the safety of police, chain of custody purposes, and to protect the department from potential false claims of theft, DeKalb Police policy mandates that closed

---

[4] CSI Woolford did not testify at the suppression hearing.

[5] Although we of course cannot make our own factual findings in reviewing the trial court's order, the State's concession below that no search took place on October 20 is consistent with an affidavit given in support of a search warrant application on remand, in which an investigator averred that police "opened" the backpacks "[d]ays" after their seizure. Moreover, even in its primary brief in this appeal, the State avers that upon seizing "the backpack," CSI Woolford photographed "it," without implying that Woolford opened the backpack at that time, and states that "the search" occurred six days after the seizure. We also note that at Kennebrew's prior trial, CSI Woolford testified that she did not search the backpacks until six days after collecting them.

containers be inventoried *before* their submission to the property room. Indeed,

Sgt. Neal testified that department policy required such to ensure "a bomb or

anything else is not put in the property room" — a purpose that would be

achieved only if it required items be inventoried *prior* to their submission to the

property room. But the trial court made no findings as to whether the October

26 search took place before the backpacks were placed in the property room or

as to the location of the backpacks during the six days prior to that search. And

the State points to no record evidence that the October 26 search took place

before the backpacks were placed in the property room. The State thus has not

shown that the October 26 search was done in accordance with standard,

established inventory procedures. See Clay v. State, 290 Ga. 822, 830 (2) (A)

(725 SE2d 260) (2012) (State failed to meet its burden that evidence inevitably

would have been discovered in inventory search where it presented no evidence

that such searches were invariable, routine county procedure).

Addressing the six-day gap between seizure of the backpacks and the

purported inventory search on October 26, the State contends that a "delayed"

inventory is not an unconstitutional inventory. In support, the State cites Cooper

v. California, 386 U. S. 58 (87 SCt 788, 17 LE2d 730) (1967), wherein the

United States Supreme Court held that a warrantless search of the defendant's vehicle one week after it had been impounded by police upon the defendant's arrest was not unreasonable under the Fourth Amendment.[6] The Supreme Court has described that decision as its first one demonstrating that "inventories pursuant to standard police procedures are reasonable." South Dakota v. Opperman, 428 U. S. 364, 372 (96 SCt 3092, 49 LE2d 1000) (1976). But there was no suggestion in Cooper that the seven-day delay was at odds with the procedures that applied in that case. So Cooper does not hold that a delay in conducting an inventory search is constitutionally reasonable even when the delay violates the applicable policy. See United States v. Mitchell, 271 U. S. 9, 14 (46 SCt 418, 70 LE 799) (1926) ("It is not to be thought that a question not raised by counsel or discussed in the opinion of the court has been decided

[6] The State also cites State v. Betterley, 529 NW2d 216 (Wis. 1995), but that case does not apply. There, the evidence in question was taken from the defendant's pants pocket pursuant to an inventory search at the time he was taken into the jail on a probation hold. Id. at 219. At issue was not the legality of that original inventory search, but whether removing that item from a jail property box eight hours later and providing it to an investigating officer could be justified as a "second look." The Wisconsin court held that because the second "search" occurred "within hours" of the defendant being taken into custody and involved no more than was involved in the original inventory search, it was reasonable as to scope and timing. Id. at 220-221. The State here relies on dicta in Betterley to the effect that police may conduct a second search more intrusive than the first, as long as it does not exceed the scope of what could have been done in the prior search. Id. at 220. But even assuming that states a correct rule, such a rule would not apply here given that the record does not reflect that any search was performed prior to October 26.

11

merely because it existed in the record and might have been raised and considered.").

Here, the evidence credited by the trial court shows that the applicable procedure mandated the inventory be performed before the backpacks were submitted to the property room. The State has not met its burden of proving that the evidence in question was discovered in accordance with that procedure, and thus has not proven that the search conducted on October 26 was a valid inventory search rather than a rummaging to discover incriminating evidence.

2. Perhaps recognizing the flaws in the State's inventory search theory, the trial court premised denial of the motion to suppress on its conclusion that the evidence in question inevitably *would* have been discovered through a lawful inventory search. But an inevitable discovery theory is not supported by the trial court's findings, either.

Inevitable discovery is an exception to the exclusionary rule that applies in circumstances in which "exclusion of the evidence puts the police in a worse position than they would have been absent any error or misconduct because the evidence . . . would have been discovered as a matter of course if independent investigations were allowed to proceed." Teal v. State, 282 Ga. 319, 324 (2)

12

(647 SE2d 15) (2007) (citation and punctuation omitted); see also Nix v. Williams, 467 U. S. 431 (104 SCt 2501, 81 LE2d 377) (1984). "Under the exception for inevitable discovery, the government may introduce evidence that was obtained by an illegal search if the government can establish a reasonable probability that the evidence in question would have been discovered by lawful means." United States v. Johnson, 777 F3d 1270, 1274 (11th Cir. 2015) (citation and punctuation omitted). "The government must also establish that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." Id. (citation and punctuation omitted); see also Clay, 290 Ga. at 828 (2) (A). Here, the government did not meet its burden of establishing a reasonable probability that the evidence in question would have been discovered via a lawful inventory search. To the extent that the State means to suggest that the evidence was discovered during an illegal search on October 20, but nonetheless is admissible because it inevitably would have been discovered later through a proper inventory search, that argument is based on the false premise that any search took place on October 20. And to the extent that the State somehow means to argue that the evidence was discovered in an illegal search on October 26 but is nonetheless admissible because it would have

13

been discovered eventually through a later, proper inventory search, that argument fails. The record would not support a finding that the October 26 search took place somewhere other than the DeKalb Police property room.[7] Given the DeKalb Police policy's requirement that an inventory search be conducted *before* submission to the property room, no later search would have qualified as an inventory search. The State thus has not met its burden to avoid application of the exclusionary rule under the inevitable discovery exception. Compare Johnson, 777 F3d at 1274-1277 (shotgun obtained in admittedly illegal search of truck prior to motorist's arrest admissible under inevitable discovery doctrine, as evidence supported trial court's findings that officer eventually would have had to impound the truck and thereby would have had to perform an inventory search in which he would have discovered the gun), with Clay, 290 Ga. at 830 (2) (A).

Judgment reversed. Melton, C. J., Nahmias, P. J., Benham, Hunstein, Blackwell, and Boggs, JJ., concur.

---

[7] CSI Woolford testified at trial that she searched the bags on October 26 "back at our lab[.]" Testimony at the suppression hearing equated the "property room" and "crime lab."

Decided September 10, 2018.

Murder. DeKalb Superior Court. Before Judge Flake.

Coxen & Worthington, Beau A. Worthington, Sr., for appellant.

Sherry Boston, District Attorney, Sheila A. Ross, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.