**FIRST DIVISION
BARNES, P. J.,
BROWN and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 25, 2025**

# In the Court of Appeals of Georgia

A25A0580. AVANT v. THE STATE.

BARNES, Presiding Judge.

Following the grant of her application for interlocutory appeal, Amy Avant appeals from the trial court's order denying her motion to suppress methamphetamine and a firearm that were seized from her rental car after a drug-detection dog alerted to her vehicle during a traffic stop. In several related enumerations of error, Avant argues that the police officer who conducted the traffic stop impermissibly prolonged the stop beyond the time required to fulfill its purpose without having a reasonable articulable suspicion of other illegal activity and that, as a result, the search of the car was unconstitutional. For the reasons discussed more fully below, we affirm.

In reviewing a ruling on a motion to suppress, we review the trial court's factual findings for clear error and its legal conclusions de novo.

> In addition, in reviewing such a ruling, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. An appellate court also generally must limit its consideration of the disputed facts to those expressly found by the trial court.

(Citations and punctuation omitted.) *Kennebrew v. State*, 304 Ga. 406, 409 (819 SE2d 37) (2018). However, an appellate court "may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape." (Citation and punctuation omitted.) *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015). Viewed in this light, the evidence introduced at the evidentiary hearing — which included the law enforcement officer's testimony and audio and video footage of the traffic stop from his dashboard and body cameras — showed the following.

On the night of June 26, 2019, a sergeant with the Grantville Police Department was on patrol on I-85. In addition to his regular patrol duties, the sergeant was assigned to drug interdiction, and he was a certified K-9 handler and had a trained drug-detection dog in his patrol car. While on patrol that night, the sergeant observed a car repeatedly cross over the left fog line as it was traveling southbound on the

interstate, and he initiated a traffic stop for failure to maintain lane. After exiting from his patrol car, the sergeant approached the passenger side window of the stopped vehicle. There were two occupants in the vehicle: Avant, who was the driver, and a male front seat passenger. According to the sergeant, both occupants appeared overly nervous for a traffic stop, and the passenger was sweating profusely.

The sergeant asked to see Avant's driver's license and informed her that he stopped her car for crossing over the fog line several times. Avant handed her Alabama license to the sergeant. The sergeant asked if the vehicle belonged to her, and Avant said that it was a rental. When the sergeant asked to see the rental agreement, Avant stated that she had a copy of the agreement on her phone, and she began searching for it. The sergeant also asked the passenger for identification, and the passenger responded that he did not have it with him. The sergeant asked the passenger for his name and birthdate, which he provided.

While the passenger remained in the vehicle, the sergeant had Avant step out of the vehicle and follow him to his patrol car so that he could begin the paperwork for the traffic citation as she continued searching for the rental agreement on her phone. Once inside his patrol car, the sergeant ran a computer check on the vehicle tag and

confirmed that it was a rental. He also ran computer checks on Avant and the passenger, which showed that neither of them was on probation or had any outstanding warrants. Additionally, the sergeant began filling out the data fields on his computer for completion of the traffic citation.

While he was running the computer checks and inputting data for the traffic citation, the sergeant asked Avant a series of questions as she stood by the passenger side window and continued to search for the rental agreement. The sergeant asked Avant who the passenger was in the car, where they were coming from, how long they had been at that location, how long she had been renting the vehicle, and why she rented it. As the sergeant questioned her, Avant said that she had found the Hertz confirmation number for the car rental on her phone, but she was unable to find the rental agreement itself. Continuing to question Avant, the sergeant asked her whether she had any luggage in the car and whether there were any weapons, marijuana, cocaine, methamphetamine, heroin, ecstasy, or open containers inside the vehicle. Avant responded that she had a purse and backpack in the car and that there was a pistol in her purse for which she had a permit, but she denied that there was any drugs or open containers in the vehicle. According to the sergeant, Avant continued to

4

appear nervous during their conversation, and her voice was shaky. The sergeant twice asked Avant for her consent to search the car, but she denied his requests.

At some point during the traffic stop, a second officer arrived at the scene and stood outside the sergeant's patrol car. After Avant declined his requests to search the rental car, the sergeant asked the second officer to enter the patrol car and complete the traffic citation on the computer. As the second officer finished the citation, the sergeant returned to the rental car; had the passenger step out of the vehicle; conducted a pat-down search of his person; asked him questions similar to those asked of Avant; and retrieved the drug-detection dog and had the dog perform a free-air sniff around the exterior of the car. The dog indicated to the presence of drugs at the driver-side rear door, and the sergeant told Avant and the passenger that he was going to search the car. While the sergeant spoke with Avant and the passenger, the second officer approached with the completed citation.

During the ensuing search of the car, the sergeant found approximately five kilograms of methamphetamine in a backpack on the floorboard behind the driver's seat and the gun in Avant's purse. Both Avant and the passenger then were placed under arrest. The traffic stop from the time of the sergeant's first contact with Avant

5

and the passenger to the time of the dog's indication of the presence of drugs inside the vehicle was approximately 11 minutes.

Avant was indicted on charges of trafficking in methamphetamine and possession of a firearm during the commission of a felony. She filed a motion to suppress the drugs and firearm discovered during the search of the rental car, alleging, among other things, that the sergeant unlawfully prolonged the traffic stop by asking questions unrelated to the traffic violation and by conducting the free-air dog sniff when he lacked a reasonable articulable suspicion of other illegal activity.

Following an evidentiary hearing, the trial court found that the sergeant had probable cause to stop the rental car for the traffic violation of failing to maintain lane, and that the sergeant's line of questioning and the free-air dog sniff occurred while the traffic stop still was in progress and did not impermissibly prolong the stop. In so ruling, the trial court found that the sergeant questioned Avant while running computer checks for outstanding warrants and inputting information into his computer, and that the second officer was still in the process of completing the traffic citation as the free-air dog sniff was conducted by the sergeant. The trial court further found that the overall duration of the traffic stop was reasonable under the

circumstances. The trial court denied the motion to suppress and granted a certificate of immediate review, after which Avant filed an application for interlocutory appeal, which this Court granted, resulting in the present appeal.

On appeal, while Avant does not contest the validity of the initial traffic stop, she argues that the sergeant unlawfully prolonged the stop by asking her and her passenger questions that were unrelated to the traffic violation or to officer safety and by having his drug-detection dog perform a free-air sniff around the rental car. More specifically, Avant does not challenge the sergeant's initial questioning of her and the passenger when he first approached the rental car; rather, her focus is on the questioning that occurred while she was standing at the patrol car window and the subsequent questioning of the passenger and free-air dog sniff. Avant asserts that the sergeant abandoned the mission of the traffic stop (i.e., the investigation of the traffic violation of failure to maintain lane) to instead pursue a drug investigation based on a mere "hunch" rather than on a reasonable articulable suspicion of illegal drug activity, thereby rendering the subsequent search of the car unconstitutional under the Fourth Amendment to the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution.

The burden was on the State to prove that the search of the rental car was constitutional, and to carry that burden, the State was required to show "that it was lawful to detain [Avant] until the time the drug dog indicated the presence of drugs." *Rush v. State*, 368 Ga. App. 827, 831 (2) (890 SE2d 883) (2023). With respect to traffic stops, it is well-established that a law enforcement officer who observes a traffic violation may stop the vehicle and conduct an investigation of the violation. Id. Once the traffic stop is effectuated, the officer acts unconstitutionally if he "unreasonably prolong[s] the stop beyond the time required to fulfill the purpose of the stop without a reasonable articulable suspicion of other illegal activity." (Citation and punctuation omitted.) Id. And in evaluating whether a traffic stop was unreasonably prolonged, we have explained that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' — to address the traffic violation that warranted the stop, and attend to related safety concerns." (Citation and punctuation omitted.) *McNeil v. State*, 362 Ga. App. 85, 88 (866 SE2d 249) (2021).

Notably, our precedent makes clear that in carrying out the mission of a traffic stop, an officer

> may, without unreasonably prolonging a stop, ask the driver to step out
> of the vehicle; verify the driver's license, insurance, and registration;

8

complete any paperwork connected with the citation or written warning; and determine if there are any outstanding warrants for the driver or the passengers. With regard to rental cars, examination of the rental agreements and any ensuing investigation are considered part of the traffic stop. While carrying out these tasks, an officer may ask the driver questions wholly unrelated to the traffic stop or otherwise engage in "small talk" with the driver, so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop.

(Citations and punctuation omitted.) *McNeil*, 362 Ga. App. at 89.

In contrast, "[a] dog sniff of a traffic-stopped vehicle is not fairly characterized as part of the officer's traffic mission, because it is a measure aimed at detecting evidence of ordinary criminal wrongdoing." (Citation and punctuation omitted.) *Allen*, 298 Ga. at 5 (2) (a). It follows that "prolonging a traffic stop in order to conduct an open-air dog sniff renders the seizure unlawful, even if that process adds very little time to the stop." Id. But if the dog-sniff is done concurrently with another activity that is related to the mission of the traffic stop, then the dog-sniff does not render the seizure unlawful. Id. at 13 (2) (d). See *State v. Dean*, 375 Ga. App. 171, 175 (914 SE2d 541) (2025).

9

Applying these principles, we conclude that based on the record in this case, including the sergeant's testimony and his body camera footage, the trial court committed no error in finding that the sergeant did not unlawfully prolong the traffic stop when he questioned Avant and the passenger about matters unrelated to the traffic stop and when he conducted the free-air dog sniff. The evidence presented at the hearing authorized the trial court to find that the sergeant questioned Avant while running computer checks for outstanding warrants and filling out the traffic citation, and that the sergeant subsequently approached and questioned the passenger and conducted the free-air dog sniff while the second officer was finishing the citation. Thus, the trial court was entitled to find that the questioning and free-air dog sniff were done concurrently with other tasks related to the mission of the traffic stop and therefore did not impermissibly prolong the stop. See *Dean*, 375 Ga. App. at 175 (holding that traffic stop was not impermissibly prolonged, where a "second law-enforcement officer arrived while [the first officer] was still in the process of writing the citation; the second officer took over the task of completing the citation; and while the second officer continued working on the citation, [the first officer] conducted the free-air sniff"); *Lewis v. State*, 332 Ga. App. 466, 470 (1) (773 SE2d

423) (2015) (determining that free-air dog sniff did not impermissibly prolong the traffic stop, where "[t]he dog sniff was initiated by one officer while a second officer finished filling out the written warning"); *Moore v. State*, 321 Ga. App. 813, 816 (1) (743 SE2d 486) (2013) (noting that officer was entitled to ask the defendant questions unrelated to the traffic stop while completing the citations); *Sommese v. State*, 299 Ga. App. 664, 670 (1) (b) (683 SE2d 642) (2009) (concluding that officer did not impermissibly prolong the traffic stop by questioning the defendant about her arrest record and the presence of illegal drugs, as the questioning occurred while the officer was completing the warning citations); *St. Fleur v. State*, 296 Ga. App. 849, 852 (1) (676 SE2d 243) (2009) (concluding that dog-sniff did not unlawfully prolong traffic stop because "while the written warning was still being completed, the second officer initiated the free-air sniff with the drug dog").[1]

[1] Cf. *McNeil*, 362 Ga. App. at 87, 90 (holding that officer unlawfully prolonged the traffic stop, where, after performing mission-related tasks such as checking for outstanding warrants of the driver and passenger, verifying their driver's licenses, and reviewing the car rental agreement, the officer "did not start writing out a warning to the driver" but instead began questioning the driver about matters unrelated to the traffic stop); *Terry v. State*, 358 Ga. App. 195, 201 (1) (854 SE2d 366) (2021) (determining that dog sniff illegally prolonged the traffic stop, where "the undisputed evidence show[ed] that all tasks related to the mission of the traffic stop were completed *before* the free-air dog sniff was conducted") (emphasis in original); *State v. Thompson*, 256 Ga. App. 188, 188-190 (569 SE2d 254) (2002) (concluding that officer unlawfully prolonged the traffic stop by continuing to question the

That conclusion does not end the analysis, however, because the overall duration of the traffic stop must always be reasonable in light of all of the circumstances. Authority for the seizure thus ends when tasks tied to the traffic infraction are — or *reasonably should have been* — completed. In determining the reasonable duration of a stop, it is appropriate to examine whether the police diligently pursued the investigation. Whether the officer acted with reasonable diligence is gauged by noting what the officer actually did and how he did it.

(Citations and punctuation omitted; emphasis in original.) *Allen*, 298 Ga. at 15 (2) (e).

Here, the trial court found that the sergeant "expedited the traffic stop by having [Avant] come back to his [patrol] car to write out the ticket"; that "[t]he stop was, if anything, prolonged by [Avant,] who had trouble finding the car's rental agreement on her phone"; and that the sergeant "had another officer take over and continue writing out the ticket before conducting the free-air sniff" so as not to prolong the traffic stop. We cannot say that the trial court erred in these determinations. Moreover, as previously noted, the initial seizure — from the time when the sergeant stopped the rental car until the drug-detection dog indicated the presence of drugs — lasted approximately 11 minutes. "Whether the duration of a

---

defendant and waiting for the arrival of a drug-sniff dog after the citation already had been issued to the defendant and his license and insurance information had been returned).

12

traffic stop was reasonable is often a highly fact-specific inquiry, but ultimately it is a question of law, and similar stops of this length (and much longer) have routinely been deemed lawful." *Allen*, 298 Ga. at 16 (2) (e) (concluding that officer acted with reasonable diligence, where the initial seizure, from when the car was stopped until the drug-detection dog alerted to drugs, lasted about 11 ½ minutes, and citing various cases upholding stops between 14 and 35 minutes in length depending on the circumstances); *Moore*, 321 Ga. App. at 816 (holding that approximately 13-minute traffic stop was not unreasonable, where the defendant's own actions contributed to the delay, and the officer "was actively working on completing the warning citations" when interacting with the defendant). Cf. *Bodiford v. State*, 328 Ga. App. 258, 263 (1) (761 SE2d 818) (2014) (concluding that officer failed to act with reasonable diligence and unreasonably prolonged the traffic stop, where the officer "knowingly avoid[ed] communication with dispatch after requesting a license check"). Accordingly, we conclude that under the circumstances of this case, the trial court was authorized to find that the sergeant acted with reasonable diligence and that the overall duration of the traffic stop was not unreasonable.

For the foregoing reasons, the trial court was entitled to conclude that the search of the rental car did not violate the Fourth Amendment to the United States Constitution or Article I, Section I, Paragraph XIII of the Georgia Constitution.[2] We therefore affirm the trial court's denial of Avant's motion to suppress.

*Judgment affirmed. Brown and Watkins, JJ., concur.*

---

[2] Because we have concluded that the traffic stop was not impermissibly prolonged, we need not address whether the sergeant lacked reasonable articulable suspicion of other illegal activity so as to justify extending the duration of the stop. We also note that the drug-detection dog's indication to the presence of drugs inside the rental car, which occurred during the lawful traffic stop, provided the sergeant with probable cause to search the vehicle. See *Rush*, 368 Ga. App. at 832-833 (2).